J-A24020-23

2024 PA Super 5

| | | |
|---|---|---|
| MICHAEL G. WATSON, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF VICTORIA R. WATSON AND MARITA FARAN WATSON | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : : | No. 2356 EDA 2022 |
| BABY TREND, INC., LAUREN LANDGREBE AND JOHN DOES 1-10 | : | |

Appeal from the Order Entered August 3, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210802189

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY DUBOW, J.: **FILED JANUARY 12, 2024**

Appellants, Michael G. Watson, individually and as the Administrator of the Estate of Victoria R. Watson, and Marita Faran Watson, appeal from the August 3, 2022 Order entered in the Philadelphia County Court of Common Pleas sustaining the preliminary objections to venue filed by Appellee, Baby Trend, Inc. ("Baby Trend"). Appellants challenge the order sustaining Baby Trend's preliminary objections to venue and transferring the case to Bucks County, as well as the orders denying discovery requests and a motion to overrule Baby Trend's objections to Appellants' subpoenas. After careful review, we affirm.

The relevant facts and procedural history are as follows. Appellants' infant daughter died of asphyxiation while sleeping in a car seat manufactured by Baby Trend and under the care of her babysitter, defendant Lauren Landgrebe. Appellants purchased the car seat from Babies R Us in February 2017. Appellants reside in Bucks County and the cause of action arose there. Baby Trend is a California-based corporation with no registered offices in Pennsylvania.

On October 12, 2021, Appellants filed an Amended Complaint in the Philadelphia County Court of Common Pleas asserting Products Liability/Strict Liability, Negligence, and Breach of Warranty claims against Baby Trend.[1]

**Preliminary Objections**

On October 20, 2021, Baby Trend filed preliminary objections to the Amended Complaint on the basis of improper venue.[2] Baby Trend contended that venue was not proper in Philadelphia County because Appellants do not live in Philadelphia County and did not allege that they purchased the car seat in Philadelphia County, the cause of action did not arise in Philadelphia County, and Baby Trend does not conduct "substantial, continuous, and systemic business in Philadelphia County." Preliminary Objections, 10/20/21, at ¶¶ 3-

---

[1] Appellants also asserted a Negligence claim against Ms. Landgrebe. Ms. Landgrebe is not a party to this appeal.

[2] Baby Trend substantiated the averments set forth in the Preliminary Objections with reference to the attached "Declaration of Brad Mattarocci[,] Vice President of Baby Trend Inc." Appellants deposed Mr. Mattarocci on January 14, 2022.

6, 10. With respect to Baby Trend's business activities in Philadelphia County, Baby Trend averred that it does not own any real estate in Philadelphia, does not have any employees in Philadelphia, the alleged defective product was not manufactured, designed, or marketed from Philadelphia, its business model is to distribute products through big-box retailers like Walmart or Target, none of whom have distribution centers in Philadelphia, and that less than one percent of its total sales are generated in Philadelphia. *Id.* at ¶ 12-16, 18, 21.

On November 9, 2021, Appellants filed a response in opposition to Baby Trend's preliminary objections in which they, *inter alia*, requested that the trial court defer ruling on the preliminary objections to permit the parties to engage in discovery pertaining to Baby Trend's business activities in Philadelphia County. On November 22, 2021, the trial court entered a Rule to Show Cause permitting the parties to conduct discovery and submit supplemental briefs limited to the issue of venue.

**Appellants' Motion to Compel Discovery**

On December 2, 2021, Appellants served Baby Trend with Requests for Production of Documents Relating to Venue. In Appellants' Request No. 8, they sought "documents showing the amount or percentage of Baby Trend product sales revenue in . . . states other than Pennsylvania[.]" Discovery Requests, 12/2/21, at 4. On February 9, 2022, Appellants filed a Motion to Compel the Production of Documents Reflecting Other-State Sales of

[Appellee's] Products, alleging that Baby Trend failed to provide the information requested.

On February 24, 2022, Baby Trend filed an answer to Appellants' motion to compel asserting that it had "responded to the discovery request to the best of its ability." Answer, 2/24/22, at ¶ 13. Further, Baby Trend objected to this particular document demand as being "overly broad and unduly burdensome insofar as a request for state[-]specific information of locales outside of Pennsylvania relate to matters other than those raised in the pleadings, are neither relevant to this action nor likely to lead to the discovery of admissible evidence, and are neither material nor necessary to the prosecution or defense of this action." *Id.* Baby Trend contended simply that Appellants' "repeated request for sales documents pertaining to other states is not necessary to determine the context in which venue is proper in Pennsylvania." *Id.*

Following a hearing, on April 19, 2022, the trial court denied Appellants' motion to compel Baby Trend to produce documents pertaining to its out-of-state sales data.

**Appellants' Subpoenas**

Meanwhile, on January 19, 2022, Appellants served notices of intent to serve subpoenas on Walmart and Target (the "big-box retailers") to produce documents and other discovery related to sales data of Baby Trend products from: (1) the retailers' brick-and-mortar stores in Pennsylvania; (2) each retail store in Philadelphia, Bucks, Montgomery, Chester, and Delaware

Counties; (3) online sales to consumers in Pennsylvania; and (4) online sales in each of the five counties.

On February 9, 2022, Baby Trend filed objections to the notices of intent to serve subpoenas, asserting that the information Appellants sought was irrelevant, oppressive, burdensome, vexatious, and unlikely to lead to the discovery of admissible evidence as to venue because the sales data requested implicates not Baby Trend's business activities, but the business activities of the big-box retailers, who are resellers of items they purchase wholesale from Baby Trend.

On February 23, 2022, Appellants filed a Motion to Overrule Baby Trend's objections to Appellants' service of subpoenas. Appellants claimed that they had "crafted their subpoenas narrowly" and they disputed Baby Trend's claim that the information sought was irrelevant to the court's venue analysis because Baby Trend does not exercise control over these retailers who, Baby Trend claimed, were merely resellers of Baby Trend products. Motion, 2/23/22, at ¶¶ 17, 26-67. Appellants argued, *inter alia*, that the information was, in fact, relevant because "[g]iven [that] Baby Trend's sales are largely channeled through Walmart and Target, comparative data on its sales in Pennsylvania counties is needed so the [c]ourt can evaluate Baby Trend's Philadelphia sales in full context[.]" *Id.* at ¶ 34.

On May 23, 2022, the trial court denied Appellants' motion to overrule Baby Trend's objections.

**The Instant Appeal**

After the parties filed supplemental briefs on the issue of venue, the trial court entered an order on August 3, 2022, sustaining Baby Trend's preliminary objections and transferring this matter to Bucks County.

This appeal followed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues on appeal:

1. Did the trial court abuse its discretion in holding that Baby Trend does not regularly conduct business in Philadelphia County by improperly focusing on sales data in isolation, thereby misapplying this Court's holding in **Hangey v. Husqvarna**, 247 A.3d 1136 (Pa. Super. [] 2021)[3]?

2. Did the trial court abuse its discretion in failing to grant [Appellants'] motion to compel production of Baby Trend's sales data in other states that would provide the necessary context to determine whether its business activities in Philadelphia were regular, habitual, and continuous?

3. Did the trial court abuse its discretion in failing to grant [Appellants'] motion to overrule Baby Trend's objections to subpoenas directed to Walmart and Target seeking sales data of Baby Trend car seats in five Pennsylvania counties, including Philadelphia?

Appellant's Brief at 7.

_____

[3] On November 22, 2023, our Supreme Court issued an opinion affirming this Court's reversal of the trial court's order transferring venue from Philadelphia County to Bucks County. **_See Hangey v. Husqvarna Prof'l Products, Inc._**, 2023 WL 8102730, ___ A.3d ___ (Pa. 2023), discussed _infra_.

**A.**

In their first issue, Appellants contend that the trial court abused its discretion in sustaining Baby Trend's preliminary objections to venue and transferring this case to Bucks County.

We review an order sustaining preliminary objections asserting improper venue for an abuse of discretion. *Hangey v. Husqvarna Prof'l Products, Inc.*, 2023 WL 8102730, at *14 (Pa. Nov. 22, 2023). "A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper." *Fritz v. Glen Mills Schools*, 840 A.2d 1021, 1023 (Pa. Super. 2003) (citation omitted). "[I]f there exists any proper basis for the trial court's decision to grant the petition to transfer venue, the decision must stand." *Hangey*, 2023 WL 8102730, at *14 (citation omitted).

A civil action may be brought against all defendants in any county in which venue may be laid against any one of the defendants "under the general rules." Pa.R.Civ.P. 1006(c)(1). Rule 2179 governs venue in cases against corporate entities. In relevant part, Rule 2179 holds that "a personal action against a corporation or similar entity may be brought in and only in . . . a county where it regularly conducts business[.]" *Id.* at 2179(a)(2). In the venue context, "regularly" does not mean "principally," and a defendant "may perform acts regularly even though these acts make up a small part of its total

activities." **Hangey**, 2023 WL 8102730, at *16 (citation and emphasis omitted).

In determining whether venue is proper under this rule, courts employ a "quality-quantity analysis[.]" **Id.** at *15; **see also Zampana-Barry v. Donaghue**, 921 A.2d 500, 503 (Pa Super. 2007) ("A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established.").

"The term 'quality of acts' means those directly furthering, or essential to, corporate objects; they do not include incidental acts." **Hangey**, 2023 WL 8102730, at *15 (citation omitted). To satisfy the quantity prong of this analysis, acts must be sufficiently continuous so as to be considered habitual. **Id.**

In **Hangey**, our Supreme Court recently considered "big-box retail sales" and the import of authorized retailers in analyzing the concept of quality and quantity of contacts. Mr. Hangey fell off his HPP-manufactured lawnmower and the lawnmower ran over his legs while the blades were still engaged. The accident occurred in Wayne County. In March 2017, Mr. Hangey filed a complaint in Philadelphia County against HPP and Trumbauer's Lawn and Recreation, Inc. The defendants filed preliminary objections alleging improper venue.

Discovery related to the issue of venue revealed, *inter alia*, that in 2016, HPP had approximately $1.4 billion in sales revenue in the United States, of which $75,310.00 came from direct sales in Philadelphia County. Of the

$75,000 in sales made in Philadelphia in 2016, roughly $69,700 came from a single Husqvarna authorized dealer, DL Electronics, Inc. Approximately 0.005% of HPP's 2016 United States sales revenue resulted from direct sales in Philadelphia County. Sales data from 2014 and 2015 was substantially similar, with approximately 0.005% of annual United States sale revenue resulting from direct sales within Philadelphia County. These figures did not include the revenue generated by big-box retailers such as Home Depot, Lowe's, or Sears selling HPP's products.

With respect to those big-box retailers, testimony established that HPP delivers its products to those retailers' distribution centers, none of which are located in Philadelphia County. The big-box retailers retained sole discretion as to where the products are offered for sale, including stores located in Philadelphia County.

Following oral argument, the trial court sustained the preliminary objections and transferred venue to Bucks County. The Hangeys appealed, and this Court, sitting *en banc*, reversed the trial court's decision.

Our Supreme Court affirmed our reversal. In considering the quality prong, the Court observed that by distributing products to two authorized retailers who have "specific places of business in Philadelphia County," HPP furthered its "business objective." ***Hangey***, 2023 WL 8102730, at *20. The Court also observed that HPP's business activities in Philadelphia through authorized retailers were so continuous and sufficient to be termed general or habitual because, *inter alia*: (1) "HPP maintained business relationships with

these authorized dealers[;]" and (2) "year after year executed consistent sales[.]" *Id.* (citation omitted).[4] The Court held, therefore, that "as a matter of law, when a company maintains a constant physical presence in the forum county to perform acts that are directly furthering, or essential to, its corporate objects, **even when it does so through an authorized dealer**, its business activities are so continuous and sufficient to be termed general or habitual." *Id.* at *21 (citation and internal quotation marks omitted, emphasis added).

In addressing the quality prong, however, the **Hangey** Court concluded that the trial court erred because it based its decision that Philadelphia County was not the proper venue "**only** on the [*de minimis*] percentage of HPP business conducted in Philadelphia County." *Id.* at *16 (emphasis added). The Court acknowledged that only 0.005% of HPP's annual revenue came from direct sales from Philadelphia County. However, because the Court concluded that HPP's business activities in Philadelphia County through its authorized retailers were not merely incidental acts, "their occurrences count toward the quantity prong even if they do not generate a lot of revenue." *Id.* at *18.

_____

[4] Notably, the Court found persuasive "HPP's constant physical presence in Philadelphia County[]" through the authorized retailers. *Id.* at 21. The Court observed that HPP formed and maintained relationships with the dealers and allowed the dealers to "stock, display, and sell HPP products in those physical locations on a day-to-day basis" in an effort to "try[] to make sales in Philadelphia [] regularly and continuously." *Id.* It opined that "even if HPP's products are collecting dust on the store shelves and HPP is making relatively little money out of Philadelphia County, its business activities still satisfy the quantity prong when we consider the regularity of those activities, as we must[.]" *Id.*

**B.**

Appellants here argue that the trial court abused its discretion when it concluded that Baby Trend does not regularly conduct business in Philadelphia County. Appellant's Brief at 15-23. In particular, they argue that Baby Trend's sales to big-box retailers in Philadelphia County and direct to Philadelphia County consumers through Baby Trend's website satisfy the "quality" prong of the venue test because those sales are not "merely incidental." Appellant's Brief at 16-17. Appellants note that Baby Trend's sales data indicates that its direct sales to Philadelphia County consumers exceed that of any other Pennsylvania County—including Bucks County where Baby Trend alleges the case should sit—in both products sold and dollar amount. *Id.* at 17. Appellants also emphasize that Baby Trend's Philadelphia County direct sales comprised 11% of its direct sales in Pennsylvania, whereas direct sales in Bucks County comprised only 4%. *Id.* Although Appellants acknowledge that Baby Trend's corporate objective is to sell products as a "**wholesaler** of manufactured goods, within the juvenile brands industry," they nonetheless argue that the trial court erred in characterizing direct-to-consumer, *i.e.*, non-wholesale, sales as "merely incidental."[5] *Id.* at 17-18 (emphasis added). Appellants further contend that the trial court erred in disregarding that, as a "merchant wholesaler of a variety of products, [] the

---

[5] Baby Trend sales data indicate that direct website sales comprise only .56% of Baby Trend's total sales.

sale of those products—directly or indirectly—to consumers in Philadelphia not only furthered but were essential to Baby Trend's corporate object and existence." *Id.* at 19.

With respect to the "quantity" prong of the venue analysis, Appellants assert that the trial court erred in viewing Baby Trend's direct-to-Philadelphia-consumer sales of .0018% of total sales in isolation and by failing to consider the import of its sales through big-box retailers entirely. *Id.* at 20-21. They argue that the court should have considered the direct-to-consumer sales "in the proper context of [Baby Trend's] overall business" and the estimated sales through big-box retailers, which together comprise about 5% of Baby Trend's gross national sales. *Id.* at 21-22. Had it done so, Appellants conclude the court would have determined that Baby Trend's regularly-conducted business in Philadelphia County satisfies the "quality" prong. *Id.* at 21.

Appellants also argue that no authority supports the trial court's conclusion that because Baby Trend does not decide where big-box and brick-and-mortar retailers sell the products they purchase from Baby Trend that the court can "ignore" Baby Trend's sales through retailers when analyzing venue. *Id.* at 21-22. They argue that Pa.R.Civ.P. 2179(a)(2), which permits venue wherever a corporation "regularly conducts business," supports the opposite conclusion because Rule 2179 does not distinguish between direct sales and sales through intermediary retailers when considering venue. *Id.* at 22.

**C.**

In addressing Appellants' issues, the trial court noted in its Rule 1925(a) Opinion that Baby Trend sells its products in two ways—via wholesale transactions to big-box retailers and direct to consumers through its website. It observed that, overall, more than 99% of its sales are to big-box retailers, while just over half of one percent of sales are direct to consumers. Trial Ct. Op., 12/16/22, at 6-7. The court found that in its transactions with big-box retailers, Baby Trend has no control over the locations at which the big-box retailers ultimately market or sell Baby Trend's products to consumers. *Id.* at 7.

The court then summarized the evidence of contacts by Baby Trend with Philadelphia County as follows:

> [Appellants] aver that Baby Trend products are available in stock at six (6) Target Locations and four (4) Walmart locations within Philadelphia.
>
> In regard to direct sales, it is averred that Baby Trend does not specifically target or advertise to the Philadelphia market. Baby Trend[']s direct to consumer sales in Philadelphia for fiscal year 2021 involved twenty-three (23) purchases with a total value of $3,367.10. These direct to consumer sales in Philadelphia represent .0018% of Baby Trend's total 2021 sales.
>
> The record also indicates that Baby Trend does not have any direct connection to Philadelphia. Baby Trend does not own any real estate in Philadelphia. Baby Trend does not maintain any place of business in Pennsylvania or Philadelphia, does not employ any sales representative in Philadelphia, does not possess any licenses, registrations, or authorizations from Pennsylvania and is not registered as a foreign corporation for the purposes of doing business in Philadelphia, and does not pay Pennsylvania taxes. Finally, Baby Trend does not buy any products or materials from Pennsylvania vendors[,] nor has it specifically designed a product for the Pennsylvania market.

***Id.*** at 7 (citations and internal quotation marks omitted).

Given these facts, the trial court concluded that Baby Trend's business activities in Philadelphia County failed to meet both the "quality" and "quantity" prongs of the venue analysis. Unlike in ***Hangey***, the court determined that Baby Trend's direct sales to Philadelphia County consumers failed to satisfy the "quality" prong because its direct-to-consumer-sales, constituting only .56% of its overall sales, were merely incidental to Baby Trend's corporate object as a **wholesaler**—as opposed to as a retailer—of juvenile products. ***Id.*** at 8. The court concluded that Baby Trend's contacts with Philadelphia County did not satisfy the "quantity" prong because Baby Trend generated only .0018% of its 2021 sales in Philadelphia County **and** it "maintains no connections with this jurisdiction." ***Id.*** The court found it significant that, unlike the defendant in ***Hangey***, Baby Trend does not maintain an authorized dealer with a physical presence in Philadelphia County through which it offers its products for sale direct to consumers.

## D.

Our review of the record supports the trial court's decision to transfer this case to Bucks County. With respect to the quality of Baby Trend's contacts, the evidence of record confirms the trial court's finding that Baby Trend's direct website sales to consumers in Philadelphia County, comprising less than one percent of its total sales, is *de minimis* and purely incidental— those sales simply do not further, and are not essential to, Baby Trend's business objective of serving as a wholesaler of juvenile items to retail chains.

Appellants have not cited to any authority in support of their argument that the trial court erred in declining to include sales of its products generated by big-box retailers in its analysis of Baby Trend's business activities in Philadelphia County and we have found none. The trial court correctly refused to impute the business activities of a separate and distinct business onto the business activities of Baby Trend. Once Baby Trend sells its products to big-box retailers, it has no control over where the retailers sell the products. Thus, it is the big-box retailer, and not Baby Trend, who is engaged in the act of selling the product to customers. Consequently, the business activities of the big-box retailers in Philadelphia are irrelevant to determine Baby Trend's business activities in Philadelphia.

With respect to the "quantity" prong of the "regularly-conducts-business analysis," and contrary to Appellants' claim, it is evident that the trial court did not rely exclusively on evidence of the meager percentage of Baby Trend's sales that occurred in Philadelphia when conducting its review. Rather, as set forth above, the court also relied on Baby Trend's lack of business activity in Philadelphia, specifically noting, *inter alia*, that Baby Trend: (1) does not own any real estate in Philadelphia; (2) does not maintain any place of business in Pennsylvania or Philadelphia; (3) does not employ any sales representative in Philadelphia; (4) does not possess any licenses, registrations, or authorizations from Pennsylvania; and (5) is not registered as a foreign corporation for the purposes of doing business in Philadelphia. The court also

observed that, unlike in **Hangey**, Baby Trend has no authorized dealer in Philadelphia.

Our review confirms that, given the complete absence of any physical presence in Philadelphia through which Baby Trend conducts business activity essential to its business objective, *i.e.*, wholesale sales to retailers, and the *de minimis* incidental business activity, there is no evidence demonstrating that Baby Trend's contacts with Philadelphia County are continuous, habitual, or regular. For the foregoing reasons, Appellants' claim that the trial court abused its discretion in sustaining Baby Trend's preliminary objections to venue and transferring this case to Bucks County lacks merit.[6]

Order affirmed.

---

[6] Appellants' final two issues challenge the trial court's orders denying their motion to compel production of Baby Trend's other-state sales data and denying their motion to overrule Baby Trend's objections to subpoenas. Appellants' Brief at 23-29. Appellants have presented these issues "in the alternative" to this Court ruling on the propriety of the order sustaining Baby Trend's preliminary objections, suggesting that we stay that order, reverse the discovery orders, and remand the case for the parties to complete discovery related to venue. *Id.* We decline this invitation and, in light of our conclusion that the trial court did not abuse its discretion in sustaining the preliminary objections based on venue, find Appellants' second and third issues moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/12/2024</u>