J-A08034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THEODORE TROSETH, AN INDIVIDUAL AND CHERYL TROSETH, AN INDIVIDUAL | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. AND HELIGROUP FIRE, LLC | : : : : : : | No. 249 EDA 2022 |
| APPEAL OF: CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. | : : : : | |

Appeal from the Order Entered January 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210301222

| | | |
|---|---|---|
| THEODORE TROSETH, AN INDIVIDUAL AND CHERYL TROSETH, AN INDIVIDUAL | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. AND HELIGROUP FIRE, LLC | : : : : : : | No. 250 EDA 2022 |
| APPEAL OF: HELIGROUP FIRE, LLC | : | |

Appeal from the Order Entered January 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210301222

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 8, 2024**

In these consolidated appeals, Carson Helicopters Holdings Co., Inc. and Carson Helicopters, Inc. ("Carson"), along with Heligroup Fire, LLC ("Heligroup Fire") (collectively "Appellants"), challenge the trial court's order overruling their preliminary objections to venue in this personal injury action filed by Theodore and Cheryl Troseth ("the Troseths" collectively). Upon review, we reverse and remand with instructions.

Succinctly, the pertinent history of this case is as follows. Mr. Troseth, who resides with his wife in Arizona, sustained injuries when a helicopter crashed in Afghanistan after its rotor blades separated. His employer, Construction Helicopters, Inc. ("CHI") had leased the helicopter from Heligroup Fire, which is organized in and principally operates out of Montana.[1] Thereafter, the Troseths commenced this action in Philadelphia County. The complaint alleged that Carson, a Delaware corporation with its principal place of business in Bucks County, Pennsylvania, had refurbished the helicopter by, *inter alia*, installing the rotor blades before it sold it to Heligroup Fire. An amended complaint asserted that Appellants regularly conducted business in Philadelphia County.

---

[1] Heligroup Fire is a holding company that owns and leases helicopters, such as the one it leased to CHI in this instance. Heligroup Fire and CHI are separate entities both owned by Heligroup Holdings, Inc. All three companies are controlled by Chris Turner.

Carson and Heligroup Fire filed preliminary objections challenging the propriety of venue in Philadelphia County. The trial court issued a rule to show cause why the objections should not be sustained. After the parties conducted discovery and submitted additional briefs, the court overruled the preliminary objections. Pursuant to Pa.R.A.P. 311(b), Appellants filed timely appeals as of right following the trial court's subsequent order certifying that the case presented a substantial issue as to venue.[2]

The trial court did not direct Appellants to file Pa.R.A.P. 1925(b) statements but it did author a Rule 1925(a) opinion citing the Troseth's allegations that, *inter alia*, Carson had a contract with Philadelphia-based Ehmke Manufacturing Company ("Ehmke") to support its order. Argument was scheduled before a different panel of this Court. However, we concluded that we could not conduct appropriate review because the trial court's opinion failed to adequately detail the facts upon which it relied in ruling that venue in Philadelphia County was proper. We therefore entered an order remanding for a new Rule 1925(a) opinion. Ultimately, the trial court submitted its supplemental opinion, the parties filed supplemental briefs, and the case was argued before the instant panel.

In their joint brief, Appellants present the following questions for our consideration:

_____

[2] This Court consolidated the appeals upon Appellants' unopposed joint application.

1.      Did the trial court err, and thereby abuse its discretion, by overruling [Carson's] preliminary objection to venue in Philadelphia County where [its] business activities in Philadelphia County were insufficient to establish venue there?

2.      Did the trial court err, and thereby abuse its discretion, by overruling [Heligroup Fire's] preliminary objection to venue in Philadelphia County where [the Troseths] showed absolutely no business contacts between [it] and Philadelphia County and the trial court's sole basis for asserting venue was appropriate as to Heligroup Fire . . . depended on the court's erroneous conclusion that venue was proper as to Carson . . .?

Appellants' brief at 5.

We begin with a review of the applicable law. A trial court's ruling as to venue "will not be disturbed on appeal absent an abuse of discretion." ***Hangey v. Husqvarna Prof'l Products, Inc.***, 304 A.3d 1120, 1141 (Pa. 2023).

An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record. An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion; if there exists any proper basis for the trial court's decision . . . the decision must stand.

***Id***. (cleaned up). Nonetheless, to the extent we must address questions of law, "our standard of review is *de novo* and our scope is plenary." ***Id***.

Proper venue is governed by Pa.R.Civ.P. 1006, which provides as follows in pertinent part:

**(a) General Rule**. Except as otherwise provided by subdivisions (b) and (c) of this rule, an action against an individual may be brought in and only in a county where

- 4 -

(1) the individual may be served;

(2) the cause of action arose;

(3) a transaction or occurrence took place out of which the cause of action arose;

(4) venue is authorized by law; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

**(b) Venue Designated by Rule**. Actions against the following defendants, except as otherwise provided in subdivision (c), may be brought in and only in the counties designated by the following rules: . . . corporations and similar entities, Rule 2179.

**(c) Joint and Several Liability Actions**. An action to enforce a joint or joint and several liability against two or more defendants, except actions in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of subdivisions (a) or (b).

. . . .

**(e) Improper Venue to be Raised by Preliminary Objection**. Improper venue shall be raised by preliminary objection and if not so raised shall be waived. If a preliminary objection to venue is sustained, and there is a county of proper venue within the State, the action shall not be dismissed but shall be transferred to the appropriate court of that county. The costs and fees for transfer and removal of the record shall be paid by the plaintiff.

Pa.R.Civ.P. 1006. Since Appellants are all corporations or similar entities, we look to Rule 2179 to determine in which counties venue is proper:

**(a) General Rule**. [With exceptions not relevant here], a personal action against a corporation or similar entity may be brought in and only in a county where

(1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.Civ.P. 2179.

As for the timeframe pertinent to the analysis, we have explained that "the venue rules exclusively address where venue properly may be laid **at the time the suit is initiated**." *Hausmann v. Bernd*, 271 A.3d 486, 493 (Pa.Super. 2022) (cleaned up, emphasis added). "Thus, [the] question of improper venue is answered by taking a snapshot of the case at the time it is initiated: if it is proper at that time, it remains proper throughout the litigation." *Id*. (cleaned up).

Here, the Troseths contended that venue is proper in Philadelphia County pursuant to Rule 2179(a)(2) because Appellants regularly conducted business there. The trial court, in its initial Rule 1925(a) opinion, indicated that it agreed with the Troseths as to Carson, rendering venue proper as to Heligroup Fire as a potentially jointly-liable defendant pursuant to Rule

1006(c).[3]  In its supplemental opinion, the trial court additionally cited facts to support that Heligroup Fire also regularly conducted business in Philadelphia.  Accordingly, we turn to the legal framework applicable to assessing whether business is regularly conducted in a forum.

Our Supreme Court has recently confirmed that,

in evaluating whether a company regularly conducts business in the forum county under Rule 2179(a)(2), courts are to perform the quality-quantity analysis first articulated in **Shambe**[ **v. Delaware & Hudson R.R. Co.**, 135 A. 755 (Pa. 1927)]:

The business engaged in must be sufficient in quantity and quality.  The term "quality of acts" means those directly furthering, or essential to, corporate objects; they do not include incidental acts.  By "quantity of acts" is meant those which are so continuous and sufficient to be termed general or habitual.  A single act is not enough.  Each case must depend on its own facts.

**Hangey**, 304 A.3d at 1142 (cleaned up).  The Court explained that "the word 'sufficient' in the quantity prong refers to the acts deemed sufficient under the quality prong.  It is those sufficient, quality acts that must be performed regularly to satisfy the venue inquiry."  **Id**. at 1143–44.

_____

[3] It is apparent from the certified record that no other subsection of Rule 2179 was a viable alternative, as none of Appellants had a registered office of principal place of business in Philadelphia County, and the cause of action did not arise there, involve a transaction or occurrence that took place there, or seek equitable relief concerning property there.

Indeed, the ***Hangey*** Court emphasized that, in applying Rule 2179(a)(2), "the crux of the court's inquiry is regularity." ***Id***. at 1144 (cleaned up). In this vein, the Court clarified as follows:

> It must be remembered that it is the word "regularly" which we are construing and not "principally." A corporation may perform acts "regularly" even though these acts make up a small part of its total activities. Nor does "regularly" necessarily mean . . . that the acts must be performed on a fixed schedule or, when driving is involved, over a fixed route. The question is whether the acts are being "regularly" performed **within the context of the particular business**.

***Id***. at 1146–47 (cleaned up, emphasis in original).

For an example of the application of the quality-quantity analysis, in ***Purcell v. Bryn Mawr Hospital***, 579 A.2d 1282 (Pa. 1990), the trial court determined that venue was proper in Philadelphia County pursuant to Rule 2179(a)(2) based upon the fact that the defendant hospital, which was located in Montgomery County:

> (a) ha[d] contractual affiliations with residency programs of teaching hospitals in Philadelphia. . .;
>
> (b) recruit[ed] and employ[ed] medical residents from the aforementioned Philadelphia teaching hospitals for the performance of services to patients of Bryn Mawr Hospital in Montgomery County;
>
> (c) purchase[d] goods and services from business(es) in Philadelphia County for the furtherance of its business in Montgomery County;
>
> (d) maintain[ed] and pa[id] for advertisements listing the hospital in the Philadelphia County Yellow Pages;
>
> (e) maintain[ed] and pa[id] for advertisements in the White Page Telephone Directory of Philadelphia County;

- 8 -

(f) place[d] continuous advertisements in the Philadelphia Inquirer for distribution primarily in Philadelphia County; and

(g) accept[ed] a portion of its income from residents of Philadelphia County, who, for whatever reason, whether it be advertising, telephone listings or other reasons, chose Bryn Mawr Hospital for treatment.

*Id*. at 1283–84 (cleaned up). This Court affirmed.

However, our Supreme Court ruled that the facts of the case did **not** demonstrate business activities of sufficient quality and quantity to render venue proper in Philadelphia. First, the Court held that "the rotation and use of medical personnel is essentially an educational process which does not amount to the quality of business activity which we contemplated in ***Shambe*** and its progeny." *Id*. at 1287. It concluded that the arrangements with the medical schools did not "go beyond mere incidental contacts rather than being essential to Bryn Mawr" because "[t]he hospital ha[d] its own permanent staff which alone would be capable of treating patients." *Id*. As for the remaining acts of the hospital cited by the trial court, our High Court summarily rejected them thusly:

[W]e find it to be patently evident that the mere purchase of hospital supplies from Philadelphia merchants cannot form a satisfactory rationale for conferring venue. It is equally clear that advertisements in Philadelphia's phone books and newspapers also fail to meet our standards for the exercise of venue. Mere solicitation of business in a particular county does not amount to conducting business.

*Id*. Accordingly, because the defendant did not regularly conduct business activities in Philadelphia County, the Court held that venue there was improper.

This Court has since relied upon ***Purcell*** numerous times in concluding that incidental acts like purchasing supplies in the forum county or utilizing its court system to enforce its legal rights in other matters do not support venue where the defendant had no physical presence in that county. ***See***, ***e.g.***, ***Fritz v. Glen Mills Sch.***, 840 A.2d 1021, 1023–24 (Pa.Super. 2003) (ruling that the defendant school did not regularly conduct business in Philadelphia because the facts that "approximately 35% of its students are from Philadelphia" and that it had "independently utilize[d] the Philadelphia Court System" were merely incidental aids to its purpose to rehabilitate juveniles rather than being essential to the school's existence); ***PECO Energy Co. v. Philadelphia Suburban Water Co.***, 802 A.2d 666, 670 (Pa.Super. 2002) (holding the defendant's acts of having a mile of pipeline run through Philadelphia County, making a purchase of 300,000 gallons of water from the City of Philadelphia, and entering a contract allowing additional future such purchases as needed were "minimal and incidental, at best" and were not "essential to the furtherance of [its] business in any significant way"); ***Kubik v. Route 252, Inc.***, 762 A.2d 1119, 1124 (Pa.Super. 2000) (holding defendant restaurant's contacts with Philadelphia County did not constitute regularly doing business there although it solicited patrons from Philadelphia,

sold gift certificates on its website to Philadelphia patrons, and purchased from Philadelphia "food commodities on a daily basis"). *See also Watson v. Baby Trend, Inc.*, 308 A.3d 860, 868–69 (Pa.Super. 2024) (affirming transfer of case to Bucks County upon sustaining venue preliminary objections where defendant Baby Trend had no physical presence in Philadelphia County, its *de minimis* direct online sales to Philadelphia customers were not essential to the business, and the activities of Target and Walmart in selling Baby Trend products there could not be imputed to the defendant).

Notably, the *Purcell* Court opined that its "conclusion would be different if, for example, Bryn Mawr established a branch clinic in Philadelphia where paying customers would be diagnosed or treated on the premises in Philadelphia, just as there can be no question that Bryn Mawr [did] business in Montgomery County[,]" where the hospital was located. *Purcell*, 579 A.2d at 1287. The *Hangey* Court faced a variation of that scenario where the defendant HPP, a distributor of lawn maintenance equipment to retailers, did not itself have a physical store in Philadelphia County, but had contracts with two retailers whose stores were in Philadelphia County.

Our Supreme Court concluded that the contracts with authorized dealers satisfied the quality prong of the test for proper venue, as these acts directly furthered HPP's business objective by distributing products to Philadelphia retailers. *See Hangey*, 304 A.3d at 1148. The Court further concluded that these acts were of sufficient quantity to render HPP's business conduct

regular, regardless of the sales volume or percentage of HPP's revenues derived from these Philadelphia establishments, explaining:

> HPP entered into contracts with DL Electronics and S&H Hardware to allow them to sell HPP products as authorized dealers. HPP admits that unlike the big-box retailers that handle their own distributions to multiple locations, its authorized dealers typically do business at one specific location. Forming and maintaining these relationships with businesses that have physical locations specifically in Philadelphia County, and allowing them to stock, display, and sell HPP products in those physical locations on a day-to-day basis, HPP has regularly performed its business activities in the county. . . . [E]ven if HPP's products are collecting dust on the store shelves and HPP is making relatively little money out of Philadelphia County, its business activities still satisfy the quantity prong when we consider the regularity of those activities, as we must under our precedent. Obviously, HPP is at least **trying** to make sales in Philadelphia, regularly and continuously. As a matter of law, when a company maintains a constant physical presence in the forum county to perform acts that are directly furthering, or essential to, its corporate objects, even when it does so through an authorized dealer, its business activities are necessarily so continuous and sufficient to be termed general or habitual.

*Id*. at 1149 (cleaned up, emphasis in original). *See also Monaco v. Montgomery Cab Co.*, 208 A.2d 252, 256 (Pa. 1965) (holding taxi cab defendant regularly did business in Philadelphia County where, although it was not legally permitted to pick up customers there, it habitually drove customers from Montgomery County to Philadelphia and collected the fares there, "acts directly essential to and in furtherance of corporate objects"); *Zampana-Barry v. Donaghue*, 921 A.2d 500, 506 (Pa.Super. 2007) (affirming venue in a suit against a law firm was proper in Philadelphia County under Rule 2179(a)(2) where the defendant consistently derived revenue from providing

legal services to clients in Philadelphia, quality acts which were essential to the law firm's existence).

Mindful of this precedent, we turn to the ruling at issue, beginning with Carson. In its initial Rule 1925(a) opinion, the trial court concluded, based upon the averments in the Troseth's complaint, that the quality prong was met by Carson's contract with Ehmke, equating it with the authorized dealers who sold the defendant's lawnmowers in **Hangey**. **See** Trial Court Opinion, 8/24/22, at 5. As for the quantity prong, the court, again not citing facts of record but "taking [the Troseths'] claims as true," ruled that Carson had contacts of sufficient quantity with the forum through the Ehmke relationship, "several dealings with other undisclosed businesses around Philadelphia [C]ounty," and "the alleged use of Philadelphia airports for their helicopters." **Id**. at 6.

In response to our direction to provide a supplemental opinion detailing the facts upon which it based its decision, the trial court identified a single evidenced-based connection with Philadelphia County to support both the quality and quantity prong as to Carson, namely its business relationship with Ehmke. Regarding the quality prong, the court explained:

> Ehmke is a Philadelphia[-]based company that supplies interior components to helicopters. As it pertains to this case, Ehmke was the entity that provided the interior for the subject helicopter involved in the accident that led to [Mr. Troseth's] injuries and has done work for [Carson] on other occasions in the past. Although Appellants argue that no money was ever exchanged in Philadelphia as well as that all of the work that Ehmke has performed for [Carson] took place at . . . Carson's warehouse in

- 13 -

Bucks County, Pennsylvania, a continuous business relationship between [Carson] and Ehmke still exists between the parties and because of such business relationship, and [Carson's] choice to engage with a Philadelphia business, it is not outside the realm [of possibility] to believe that Appellants can be subject to suit in Philadelphia County based on this business relationship. Therefore, because of the current business relationship that exists between . . . Carson and the Philadelphia entity Ehmke . . . to further the corporate objects of . . . Carson as well as the fact that the Philadelphia entity performed work on the subject helicopter, this justifies Philadelphia County being a proper venue for this action.

Trial Court Supplemental Opinion, 5/17/23, at 7 (cleaned up). Addressing the quantity of acts, the court reiterated the same:

[A]s mentioned prior, . . . Carson has an existing business relationship with Ehmke . . . . In this business relationship, Ehmke provided . . . Carson with the interior components for the subject helicopter involved in the accident that led to [the Troseths'] injuries along with work done on other occasions for other helicopters. Although frequent business activity is not done between the parties and . . . Carson may use other businesses to help carry out its corporate objects, based on this business relationship and the fact that . . . Carson has the ability to utilize the business relationship with Ehmke to carry out its corporate objects, the acts done in this relationship can be considered continuous. Thus, it satisfies the quantity prong needed for venue to be proper in Philadelphia County.

*Id*. at 9.

The Troseths maintain on appeal that the trial court's ruling is legally proper and supported by evidence of record. They assert that Carson's business relationship with Ehmke was undertaken "in furtherance of Carson's core business" of refurbishing helicopters and, therefore, is a significant quality contact. *See* Troseths' supplemental brief at 6. The Troseths further argue that Carson's acts of doing business with Ehmke demonstrate

- 14 -

continuous, ongoing dealings amounting to over $1 million in payments to Ehmke between 2013 and 2021 that are of sufficient quantity to sustain venue in Philadelphia County. *Id*. at 5.

Carson, however, contends that the facts relied upon by the trial court, *i.e.*, the circumstances of the Carson-Ehmke relationship, are insufficient to support venue in Philadelphia County. It first observes that the trial court, like the Troseths, looked not at a snapshot of Carson's acts in Philadelphia County at the time the lawsuit was filed in 2021. Instead, Carson posits that the work Ehmke performed, both on the helicopter at issue and on others, was too far removed from the initiation of the lawsuit to contribute towards assessing the relevant quantity or quality of contacts. *See* Appellants' supplemental brief at 5-7. Further, Carson argues that the deposition testimony of its corporate designee, Jordan Carson, cited by the trial court as the basis for its finding of a continuing association with Ehmke, supports no such relationship. Rather, it professes that Mr. Carson's testimony was that he was aware of no current plans to purchase helicopter interiors from Ehmke. *Id*. at 12-13. Finally, Carson asserts that merely making purchases from a Philadelphia-based vendor does not amount to regularly conducting business in that county. *Id*. at 8-11 (citing, *inter alia*, **Purcell**, 579 A.2d at 1283-87; **Kubik**, 762 A.2d at 1122-24 ).

Reviewing the certified record in light of the applicable legal precedent, we agree with Carson that the evidence does not support a finding that it

regularly conducted business in Philadelphia County at the time this lawsuit was filed. While the Troseths correctly observe that Ehmke's records reflected over $1 million in purchases from Carson, nearly $700,000 of that was in 2013 and 2014. *See* Carson's Supplemental Brief in Support of Preliminary Objections, 10/18/21, at Exhibit D. Ehmke had no record of sales to Carson in 2018 or 2019. *Id*. It had approximately $73,000 in sales to Carson in 2020; and only one sale totaling $1,229 in 2021, which was the year the Troseths initiated this case in Philadelphia. *Id*. As for the continuing nature of the relationship, Carson's corporate representative testified that, while they had not communicated to Ehmke any refusal to do business in the future, nor did Carson have any concrete plans to use Ehmke for any upcoming projects. *Id*. at Exhibit A (Deposition of Jordan Carson, 9/21/21, at 25)

Based on the case law discussed above, Carson's business dealings with Ehmke did not constitute actual business conduct in Philadelphia County. Carson did not go into Philadelphia to perform core business activities as did the taxicab company and law firm in *Monaco* and *Zampana-Barry*, respectively, or conduct its business in Philadelphia through an authorized dealer as did the defendant in *Hangey*. Rather, Carson made purchases from a Philadelphia company to use in conducting its business elsewhere, as did the defendants in *Purcell*, *PECO*, and *Kubik*. Those cases establish that doing business **with** a Philadelphia County company does not amount to doing business **in** Philadelphia County if the obtained goods, services, or personnel

are utilized elsewhere to further the defendant's business activities. In other words, Carson's act of hiring a Philadelphia company to supply helicopter refurbishing goods and services in Bucks County does not evince that Carson performed quality acts in Philadelphia for purposes of the venue analysis.

Moreover, this Court has held that daily incidental acts of purchasing food in Philadelphia for the defendant restaurant were not sufficient to establish proper venue in **Kubik**, and a contract to make future purchases from a Philadelphia company was insignificant in **PECO**. As such, the sporadic purchases Carson made from Ehmke in the early 2020s, when the Troseths filed this lawsuit, and the possibility that it might one day turn to Ehmke again for heretofore unplanned future orders certainly cannot suffice in this case to establish the regularity of any essential business functions.

Therefore, with both the quality and quantity of Carson's lone business connection with Philadelphia County being less substantial than the forum connections found lacking in **Purcell**, **PECO**, **Fritz**, **Kubik**, and **Watson**, we readily conclude that the trial court erred in holding that venue was proper as to Carson pursuant to Rule 2179(a)(2).

Since Carson's acts within Philadelphia County do not support venue there, venue is only proper if Heligroup Fire regularly conducted business in Philadelphia. In its initial opinion to this Court the trial court piggybacked the propriety of venue as to Heligroup Fire upon its finding venue proper as to Carson pursuant to Rule 1006(c)(1). **See** Trial Court Opinion, 8/24/22, at 8.

However, in its supplemental opinion drafted at this Court's directive to articulate the facts upon which it rested its decision, the court opined as follows as to Heligroup Fire's contacts with Philadelphia County:

First, [Heligroup Fire] is in the business of operating, owning, leasing, and selling helicopters. [Mr. Troseth] mentions a few instances where [Heligroup Fire] has established contacts in Philadelphia County to justify venue being present in Philadelphia County. [Mr. Troseth] asserts in its response to [Heligroup Fire's] preliminary objections that [Heligroup Fire] has utilized the space at Northeast Philadelphia Airport as well as Philadelphia International Airport to transport company personnel to and from other locations to carry out business activities. Specifically, this court relies on the instances where Heligroup Fire's King Air aircraft flew out of Northeast Philadelphia Airport to transport Mr. Turner to purchase the subject helicopter, meet with and eventually purchase assets from a Philadelphia based drone company called AATI, as well as conduct other business endeavors. Furthermore, this trial court also relies on [the Troseths'] averments that [Heligroup Fire] has derived income from operations that have taken place in Philadelphia County. Specifically, in the deposition of Mr. Turner, [who was offered as Heligroup Fire's representative,] it was revealed that [Heligroup Fire] received lease income from [sister company] CHI Aviation and CHI's business activities in Philadelphia County. Given these instances, the business relationship, as well as the fact that that these acts were in furtherance of corporate objects of [Heligroup Fire], this allows for the quality prong to be satisfied and supports this court[']s decision in venue being proper in Philadelphia County.

Trial Court Supplemental Opinion, 5/17/24, at 7-8 (cleaned up). Addressing the quantity of Heligroup Fire's acts in Philadelphia County, the trial court stated:

[A]s previously stated above, [Mr. Troseth] cites multiple instances where [Heligroup Fire] has established contacts in Philadelphia County. Moreover, these contacts are in furtherance of [Heligroup Fire's] business objects. Although it may be true that a single photograph of a party utilizing a space to help

- 18 -

facilitate travel is not enough to justify venue being proper in a specific county, when coupled with other occasions establishing the fact that [Heligroup Fire] engaged a Philadelphia based business to acquire assets, as well as derives income from acts performed in Philadelphia County, together, these instances demonstrate that these business acts are continuous and allows for the quantity prong to be satisfied which therefore justifies this court[']s decision to have venue be proper in Philadelphia County.

*Id*. at 9-10.

Faced with this opinion, the Troseths offered in their supplemental brief a remarkably tepid argument for affirming this ruling. *See* the Troseths' supplemental brief at 9-10. We suspect that this is because, as Heligroup Fire details, the meager facts identified by the trial court are not soundly supported by record evidence and, in any event, fail to establish that Heligroup Fire regularly conducted business in Philadelphia County at the time this lawsuit was filed. In particular, examining the evidence rather than the Troseths' averments, Heligroup Fire explains that (1) it does not operate helicopters; (2) Mr. Turner's flight into Philadelphia was in his capacity as an officer of CHI, not Heligroup Fire, and when he purchased the subject helicopter on behalf of Heligroup Fire he flew into Bucks County; (3) Heligroup Fire did not generate revenue in Philadelphia County, rather CHI, which generated some revenue there, used that revenue to pay its bills, including the cost of leasing the helicopter from Heligroup Fire; and (4) the single photograph in question was taken by the Troseths' counsel of a helicopter owned by CHI, not Heligroup Fire. *See* Appellants' brief at 15-19.

As Heligroup Fire observes, "[a]lthough a parent and a wholly-owned subsidiary share common goals, they are still recognized as separate and distinct legal entities" and there is no case law holding "that a corporation may be subject to venue based solely upon the business activities of a sister corporation in the jurisdiction in question." ***Wimble v. Parx Casino & Greenwood Gaming & Entm't, Inc.***, 40 A.3d 174, 178–79 (Pa.Super. 2012). As the Troseths offer nothing to support the imputation of CHI's Philadelphia contacts to Heligroup Fire, CHI's activities there do not pertain to assessing the quality and quantity of Heligroup Fire's actions in that forum.

Consequently, the certified record is devoid of facts supporting a finding that Heligroup Fire regularly conducted business in Philadelphia County. Hence, its presence in this lawsuit cannot sustain venue there.

In the absence of any defendant for whom venue is proper in the Troseths' chosen forum pursuant to Rule 2179, the trial court erred in overruling Appellants' preliminary objections raising improper venue. Therefore, we reverse the appealed-from order. As the record is clear that venue for this action properly lies in Bucks County, we remand for the trial court to transfer the action to the appropriate Bucks County court pursuant to Rule 1006(e), with "costs and fees for transfer and removal of the record [to] be paid by the plaintiff[s]." Pa.R.Civ.P. 1006(e).

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judge Olson joins this Memorandum.

Judge McLaughlin files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/8/2024