J-S02042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT THORNTON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NEW HOLLAND STABLES, JOHN/JANE DOE (1-10), ABC CORPORATION (1-10), DEF COMPANY (1-10) | : | No. 1431 EDA 2024 |

Appeal from the Order Entered April 30, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230600604

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED APRIL 23, 2025**

Robert Thornton appeals from the order sustaining New Holland Stables' preliminary objection to venue and transferring this case to Lancaster County. Thornton argues the trial court erred in concluding New Holland Stables does not regularly conduct business in Philadelphia County. We affirm.

Thornton, a resident of Virginia, filed a complaint in Philadelphia County alleging that on January 22, 2023, he was delivering two bulls to New Holland Stables' livestock auction facility in Lancaster County. Thornton alleged an employee of New Holland Stables left a gate unsecured, which resulted in one of the bulls escaping and severely injuring him. Thornton brought claims of negligence, gross negligence, recklessness and absolute liability.

New Holland Stables filed a preliminary objection to venue under Pa.R.Civ.P. 1028(a)(1), arguing that it does not regularly conduct business in

Philadelphia County.[1] New Holland Stables asserted that it is a domestic corporation with its principal place of business located in Lancaster County, where it "provides a location in Lancaster County where sellers and buyers gather to bid on livestock." Preliminary Objection, 11/3/23, at ¶¶ 8, 12. New Holland Stables argued that it "does not have or take an ownership interest in any of the livestock that are brought to and/or sold at the auction." *Id.* at ¶ 6. It further argued that it "does not conduct any auction services in Philadelphia County" and does not market its auctions within Philadelphia County. *Id.* at ¶¶ 10, 14. New Holland Stables claimed it "is not registered to do business in Philadelphia County, does not own or lease property in Philadelphia County, does not maintain an office or place of business in Philadelphia County, does not have agents or employees in Philadelphia County, and does not pay taxes in Philadelphia County." *Id.* at ¶ 56.

New Holland Stables further asserted that less than one percent of its customers come from Philadelphia to attend its auctions in Lancaster County, and that those customers generate less than two percent of New Holland Stables' total revenue. *Id.* at ¶¶ 15-16. New Holland Stables attached the affidavit of its office manager to support its claim that it does not conduct business in Philadelphia. *See id.* at Exh. C.

---

[1] "Philadelphia County is coterminous with the City of Philadelphia[.]" *Hangey v. Husqvarna Pro. Prods., Inc.*, 304 A.3d 1120, 1124 n.1 (Pa. 2023) (citation omitted).

The court sustained the objection and ordered that the case be transferred to Lancaster County. The court observed that because New Holland Stables' principal place of business and the site of the accident are both in Lancaster County, the only way venue could lie in Philadelphia County is if New Holland Stables "regularly conducts business" there. Trial Court Opinion, filed 7/1/24, at 3 (citing Pa.R.Civ.P. 2179(a)). The court noted that "[b]usiness contacts must be judged based on their quality and quantity." *Id.* at 3-4 (citing ***Purcell v. Bryn Mawr Hospital***, 579 A.2d 1282, 1284 (Pa. 1990)).

Considering first the quality of New Holland Stables' business contacts with Philadelphia County, the court found them to be insufficient. The court noted that New Holland Stables "merely holds auctions in Lancaster County and customers from Philadelphia County can freely decide whether to bid and sell livestock in Lancaster County," and it has never "set its corporate foot in Philadelphia":

> [Thornton] fails to offer additional facts other than the number of transactions with Philadelphia customers, which are insufficient to show [New Holland Stables] has an intention or conduct to solicit or induce business from Philadelphia County. Firstly, no evidence shows that [New Holland Stables] operates, registers, [or] owns any real property or enters into any contracts with either Philadelphia County or the City of Philadelphia. Even no evidence shows [New Holland Stables] has any incidental acts such as inviting Philadelphia-based customers to its auction in Lancaster County. [New Holland Stables] does not advertise in Philadelphia County. [New Holland Stables] merely holds auctions in Lancaster County and customers from Philadelphia County can freely decide whether to bid and sell livestock in Lancaster County. There is no evidence that [New Holland Stables] has ever set its corporate

foot in Philadelphia for any purpose, including for delivery purposes.

*Id.* at 4-5. The court also observed that the revenue generated by Philadelphia-based customers is not essential to New Holland Stables' existence:

> [Thornton] places emphasis on the flow of Philadelphia-based customers into the Lancaster County auction held by [New Holland Stables], claiming it is "essential to its commerce" and thus satisfies the quantity prong. The flow is insignificant as [New Holland Stables]'s Philadelphia-based customers from 2018 to 2023 represented only 0.96% of its total customers. Also, no evidence shows that if the Philadelphia customers [stopped attending] the livestock auctions in Lancaster County, [New Holland Stables] would cease to exist. Therefore, [Thornton] is due no relief as the "quality" prong is not satisfied.

*Id.* at 5.

The court next considered the quantity of New Holland Stables' business contacts with Philadelphia County and found it to be lacking, based on the small percentage of its revenue that New Holland Stables attributes to its Philadelphia-based customers. The court noted that it can consider the percentage of New Hollands Stables' overall sales which were made to Philadelphia-based consumers as a factor in this analysis. It also distinguished **Hangey v. Husqvarna Pro. Prods.**, 304 A.3d 1120, 1128 (Pa. 2023), on the basis that New Holland Stables is a small business with no authorized dealers in Philadelphia County:

> Here, firstly, [New Holland Stables]'s (a small business, where business is confined to Lancaster County) revenue generated from Philadelphia customers represented only 1.4% of total revenue. The percentage is minimal and insufficient to show a connection between [New Holland Stables] and Philadelphia

County. Secondly, even if according to *Hangey* where the court held that a percentage of revenue is alone not sufficient to prove a lack of connection, as [New Holland Stables] points out, [Thornton] fails to make a solid comparison with respect to *Hangey*, and the facts here can be distinguished. Unlike *Hangey*[,] which [] involves a multi-billion-dollar, national corporation, [New Holland Stables] is a small business and does not have any authorized dealer in Philadelphia County. Furthermore, as the [C]ourt in *Zampana-Barry*[ *v. Donaghue*, 921 A.2d 500, 504 (Pa.Super. 2007),] points out, each case must be evaluated on its own facts. A 1.4% generated revenue from Philadelphia County, as one of the factors to consider given the totality of the evidence presented, indicates that [New Holland Stables]'s revenue in the time frame presented is insignificant for this localized small business.

Moreover, the miniscule percentage points significantly to [New Holland Stables]'s lack of business contacts with Philadelphia County. Therefore, [Thornton] is not entitled to relief as the "quantity" prong is not satisfied.

*Id.* at 5-6.

Thornton appealed. He raises one issue: "Does a company regularly conduct business in Philadelphia County for purposes of venue, where the company transacts over $[redacted] Million of business with [redacted] Philadelphia-based customers through [redacted] continuous and systematic transactions over a six-year period?" Thornton's Br. at 3.

Thornton argues both the quality and quantity of New Holland Stables' contacts with Philadelphia County support that it regularly conducts business there. Regarding the quality of contacts, Thornton alleges New Holland Stables directly deals with Philadelphia-based customers for purchasing and selling livestock at its Lancaster County auction house, which is the core of its business. *Id.* at 15-16. Thornton alleges that the *Hangey* Court found venue

in Philadelphia County was proper, despite that the defendants in that case did not own or utilize real property in Philadelphia and were not registered to do business there, because the defendants sold products – their core business – to residents of Philadelphia County. *Id.* at 16 (citing *Hangey,* 304 A.3d at 1124, 1149).

Regarding the quantity of contacts, Thornton relies on the number of business transactions New Holland Stables has with residents of Philadelphia County and the amount of revenue this generated for New Holland Stables. Thornton argues the court erred in "hyper-focus[ing]" on the percentage of its business that New Holland Stables conducts with Philadelphia-based customers. *Id.* at 11. Thornton argues that where a business "regularly" conducts business does not mean where it "principally" conducts business, "and a defendant 'may perform acts regularly even though these acts make up a small part of its total activities.'" *Id.* at 12-13 (quoting *Hangey*, 304 A.3d at 1128). Thornton argues the court therefore abused its discretion by relying on the percentages of New Holland Stables' business that can be traced to Philadelphia customers, rather than the gross revenue generated by Philadelphia customers, number of transactions with those customers, and number of New Holland Stables' customers hailing from Philadelphia County. *Id.* at 19-20.

Thornton further argues the court erred in considering whether New Holland Stables owns property in Philadelphia County, advertises in Philadelphia County, or invites Philadelphia-based customers to attend its

auctions in Lancaster County. *Id.* at 23. According to Thornton, these acts are incidental to New Holland Stables' business and therefore not germane to the question of whether it conducts business in Philadelphia County. *Id.* Thornton further argues the court erred in considering whether New Holland Stables "depended upon Philadelphia-based revenue to survive." *Id.* at 24.

In his reply brief, Thornton argues we should find New Holland Stables regularly conducts business in Philadelphia because its Philadelphia-based customers effectively act as brokers, reselling the livestock in Philadelphia for consumption by Philadelphia residents. *See* Thornton's Reply Br. at 4-6 (citing is *Lugo v. Farmer's Pride, Inc.*, 967 A.2d 963 (Pa.Super. 2009)).

We begin with our standard of review.

> [T]rial courts [have] considerable discretion to determine whether to grant a change of venue, and such a determination will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record. An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion; if there exists any proper basis for the trial court's decision to transfer venue, the decision must stand. When resolving questions of law, however, our standard of review is *de novo* and our scope is plenary.

*Hangey*, 304 A.3d at 1141 (cleaned up).

The Rules of Civil Procedure provide that actions against corporations may only be brought in a county where

> (1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.Civ.P. 2179(a); *see also* Pa.R.Civ.P. 1006(b) (providing actions against corporations may be brought in counties designated by Rule 2179). Thornton invokes the second provision, claiming that New Holland Stables "regularly conducts business" in Philadelphia.

To determine whether a corporate defendant "regularly conducts business" in a particular county, courts must perform a "quality-quantity" analysis. *Hangey*, 304 A.3d at 1142. First, the court must consider whether the corporate defendant's acts in the subject county are of sufficient "quality" to establish venue there, which means those acts must directly further, or be essential to, the defendant's "corporate objects." *Id.* (quoting *Shambe v. Del. & Hudson R.R. Co.*, 135 A. 755, 757 (Pa. 1927)). Acts of sufficient quality do not include acts that are incidental to the main business object, such as advertising or purchasing business supplies. *Id.* at 1133-34 (discussing *Purcell*, 579 A.2d at 1287), 1142; *see also Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1125-26 (Pa.Super. 2000) (holding defendant restaurant's solicitation of patrons from Philadelphia, selling gift certificates on its website to Philadelphia patrons, and purchasing food from Philadelphia

were collateral to the restaurant's object of "sell[ing] food in its establishment").

Next, the court must find that those same acts occur in sufficient quantity, meaning they must be "so continuous and sufficient to be termed general or habitual." **Hangey**, 304 A.3d at 1142 (quoting **Shambe**, 135 A. at 757); **see also id.** at 1144 ("It is those sufficient, quality acts that must be performed regularly to satisfy the venue inquiry"). The acts may be of sufficient quantity to be considered "regular" even if they make up a small part of a corporation's total activities. **Id.** at 1143. The percentage of a corporation's overall profits that flow from qualifying acts performed within a given county may therefore be considered a factor in deciding whether the corporation regularly conducts business in that county, but may not be the sole, determinative factor. **See id.** at 1144-48.

Thornton has failed to establish New Holland Stables conducts business in Philadelphia County that is sufficiently essential to its corporate object such that even the "quality" portion of the analysis is satisfied. Thornton relies on the fact that some of New Holland Stables' patrons come from Philadelphia, and the amount of revenue this generates for New Holland Stables. However, Thornton does not allege that any portion of New Holland Stables' acts take place **in** Philadelphia, let alone those acts that are essential to its business. Thornton does not allege, for example, that New Holland Stables sells tickets to its auctions at locations in Philadelphia. That Philadelphians regularly travel to Lancaster County to engage New Holland Stables' auction services is not

- 9 -

sufficient to prove that New Holland Stables regularly conducts business in Philadelphia. *See Masel v. Glassman*, 689 A.2d 314, 318 (Pa.Super. 1997) (finding that venue was improper in Philadelphia although a portion of the defendant hospital's gross revenues came from Philadelphia residents because all services were provided in Bucks County and there were no "corporate activities taking place in Philadelphia County which directly further or are essential to the corporate object"); *see also Purcell*, 579 A.2d at 1287 (finding defendant hospital had insufficient quality acts in Philadelphia despite that it attracted medical students, physicians, and patients from Philadelphia); *Fritz v. Glen Mills Sch.*, 840 A.2d 1021, 1023-24 (Pa.Super. 2003) (holding defendant school did not regularly conduct business in Philadelphia even though "approximately 35% of its students are from Philadelphia"). Thornton's argument that New Holland Stables' sales to Philadelphia residents are substantial, continuous, and germane to its core business object ignores the fact that those habitual business transactions are occurring in Lancaster County, not Philadelphia.

We likewise reject Thornton's argument that New Holland Stables conducts business in Philadelphia because the livestock sold at its auction house might exit the stream of commerce in Philadelphia. In *Hangey*, there was no question the "quality" prong was satisfied because the defendant distributed its products to authorized retailers in Philadelphia. 304 A.3d at 1125, 1148-49. In *Lugo*, we found the quality prong satisfied because the defendant sold its products to brokers in Philadelphia County. 967 A.2d at

971. Here, New Holland Stables does not sell livestock to brokers in Philadelphia County or through authorized retailers located there. New Holland Stables does not sell livestock at all. Even if New Holland Stables's customers return to Philadelphia to resell the livestock they purchased in Lancaster County, that activity should not be imputed to New Holland Stables. *See Watson v. Baby Trend, Inc.*, 308 A.3d 860, 868 (Pa.Super. 2024) (holding where defendant wholesaler distributes products to retailers outside of Philadelphia County, a court should not find defendant conducts business in Philadelphia on the basis that the retailers opt to resell the defendant's products there). The court did not abuse its discretion in sustaining the preliminary objection to venue and transferring the case to Lancaster County.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/23/2025