Joan ZAMPANA–BARRY, Appellee

v.

Hugh A. DONAGHUE, Esquire,
and Donaghue & Bradley,
Appellants.

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.
Filed March 8, 2007.
Reargument Denied May 18, 2007.

John J. Hare, Philadelphia, for appellants.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Hugh A. Donaghue, Esquire, and Donaghue & Bradley, a law firm ("Appellants"), appeal the September 14, 2005 order [1] refusing to transfer this action from Philadelphia County to Delaware County. Appellants maintain that venue in Philadelphia County was improper under Pa. R.C.P. 2179. We affirm.

¶ 2 On April 27, 2005, Appellee, Joan Zampana–Barry, instituted this action against Appellants in the Philadelphia County Court of Common Pleas alleging that Appellants had negligently represented her in a legal action against K–Mart. Specifically, Appellee alleged that Appellants filed a personal injury action on her behalf against K–Mart, K–Mart subsequently filed for bankruptcy, Appellants failed to protect her right to proceed against K–Mart in the bankruptcy action, and as a result, summary judgment was granted to K–Mart in the personal injury action.

¶ 3 Appellants filed preliminary objections arguing that venue in Philadelphia County was improper pursuant to Pa. R.C.P. 1006(b) and 2179(a)(2), which pertain to venue over a corporation or other

---

1. After the order was entered, Appellants petitioned the trial court for inclusion of the language in Pa.R.A.P. 311(b)(2) (party can file an appeal as of right from an order sustaining venue where court states in order that substantial issue of venue is presented). The trial court denied that request, but on January 31, 2006, this Court entered an order granting Appellants' petition for review of the interlocutory order.

similar entity. Following an evidentiary hearing, the trial court overruled the objections and determined that Philadelphia County could assert venue over Appellants because they regularly conduct business in that county. This appeal followed, wherein Appellants claim that the trial court abused its discretion in sustaining venue in Philadelphia County because the record establishes that Appellants have never regularly conducted business there.

¶ 4 Initially, we need to clarify two points. First, it is unclear from the record whether the law firm is a corporation or a partnership. Pa.R.C.P. 1006(b) provides, "Actions against the following defendants, except as otherwise provided in subdivision (c), may be brought in and only in the counties designated by the following rules: political subdivisions, Rule 2103; partnerships, Rule 2130; unincorporated associations, Rule 2156; corporations and similar entities, Rule 2179." Subdivision c of that rule relates to "an action to enforce a joint or joint and several liability against two or more defendants."

¶ 5 Thus, Pa.R.C.P. 2130 contains the provisions relating to venue over partnerships while Pa.R.C.P. 2179 governs corpo-rations and other similar entities. Appellee's complaint, which was not answered due to the filing of preliminary objections, indicates that the law firm is a partnership, which would subject it to the venue provisions of Pa.R.C.P. 2130.[2] However, Appellants have consistently maintained that venue was improper under Pa.R.C.P. 2179(a),[3] which, as noted, governs venue against a corporation or similar entity. During the hearing on this matter, the attorney for Appellants referred to the principals of the law firm as both partners and shareholders. N.T. Hearing, 9/12/05, at 4, 14, 19. Thus, we are not able to ascertain whether the law firm is a partnership or a corporation.

¶ 6 Appellee premised venue in Philadelphia on the ground that the law firm regularly conducted business in that county. As noted, Pa.R.C.P. 2130 allows for venue against a partnership in "a county where it regularly conducts business," and identical language appears in Pa.R.C.P. 2179. Therefore, we review the same legal question regardless of which rule is applied. The fact that the precise nature of the entity is not established does not impact on the applicable principles in this appeal.

2.  Pa.R.C.P. 2130 (emphasis added) states:

> Except as otherwise provided by Rule 1006(a.1) [governing medical malpractice actions] and by subdivision (c) of this rule, an action against a partnership may be brought in and only in [relating to actions regarding real and personal property] **a county where the partnership regularly conducts business,** or in the county where the cause of action arose or in a county where a transaction or occurrence took place out of which the cause of actions arose or in the county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

3.  That rule provides that except as provided in Pa.R.C.P. 1006(a.1), which relates to medi-cal malpractice actions, or by subdivision (b) of Pa.R.C.P. 2179, which pertains to actions against insurance companies based upon insurance policies, an action against a corporation or other similar entity may only be brought in:

> (1) the county where its registered office or principal place of business is located;
> (2) **a county where it regularly conducts business;**
> (3) the county where the cause of action arose;
> (4) a county where a transaction or occurrence took place out of which the cause of action arose, or
> (5) a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.
> (Emphasis added).

¶ 7 We also must clarify an additional matter before proceeding further. Appellants did **not** move to transfer this action based on *forum non conveniens*. A change of venue based on *forum non conveniens* may be sought under Pa.R.C.P. 1006(d)(1), which states, "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought." As noted, the issue on appeal is whether the trial court properly determined that venue over the law firm can be maintained under Pa.R.C.P. 1006(b); Pa.R.C.P. 1006(d) is thus not implicated in this appeal.

¶ 8 Nevertheless, a good deal of Appellants' argument is devoted to a discussion of facts impacting the doctrine of *forum non conveniens* and not the question of venue presented on appeal. For example, Appellants argue that "all the events giving rise to this litigation occurred in Delaware County. Plaintiff resides in Delaware County, the defendants reside and work in that County, the parties executed their retainer agreement in that County, they held their meetings in that County, and all legal services were provided in that County." Appellants' brief at 8–9. These matters are irrelevant to whether Appellants regularly conducted business in Philadelphia. Rather, they are pertinent only to whether Delaware County is a more convenient forum and whether venue should be transferred under Pa.R.C.P. 1006(d). *See Cheeseman v. Lethal Exterminator, Inc.*, 549 Pa. 200, 701 A.2d 156, 162 (1997). We therefore do not consider them in our analysis. *Fritz v. Glen Mills Schools*, 840 A.2d 1021 (Pa.Super.2003) (where issue was whether venue was proper under Pa.R.C.P. 2179 and not one of *forum non conveniens*, Superior Court will not discuss why either county at issue would be a more convenient forum for litigation).

¶ 9 We now address whether the trial court correctly refused to transfer venue under Pa.R.C.P. 1006(b). The trial court is accorded "considerable discretion in determining whether or not to grant a petition for change of venue, and the standard of review is one of abuse of discretion." *Purcell v. Bryn Mawr Hospital*, 525 Pa. 237, 242, 579 A.2d 1282, 1284 (1990). The plaintiff's choice of forum is given great weight. *Singley v. Flier*, 851 A.2d 200, 201 (Pa.Super.2004). Thus, the party seeking a change of venue "bears the burden of proving that a change of venue is necessary, while a plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied." *Purcell, supra* at 243, 579 A.2d at 1284.

¶ 10 In determining whether a corporation or partnership regularly conducts business in a county, we employ a quality-quantity analysis. *Id.* (applying *Shambe v. Delaware and Hudson Railroad Co.*, 288 Pa. 240, 135 A. 755 (1927), *Monaco v. Montgomery Cab Co.*, 417 Pa. 135, 208 A.2d 252 (1965), and *Law v. Atlantic Coast Line Railroad Co.*, 367 Pa. 170, 79 A.2d 252 (1951), to determine whether a corporation regularly conducted business in a county). A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established. *Purcell, supra.* Quality of acts will be found if an entity performs acts in a county that directly further or are essential to the entity's business objective; incidental acts in the county are not sufficient to meet the quality aspect of the test. *Id.* Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct. *Id.* (incidental acts include advertising, solicitation of business from a coun-

ty, education programs for personnel in county, hiring of personnel from the county, and purchase of supplies from county); *see also Krosnowski v. Ward,* 836 A.2d 143, 147 (Pa.Super.2003) (*en banc* ) (business referrals to and from an independently operated business entity in another county do not establish venue in that county as referrals were in aid of main business purpose and not actual conduct of business in that county). Quantity of acts means those that are sufficiently continuous so as to be considered habitual. *Purcell, supra.* Each case must be based upon its own individual facts. *Id.*

¶ 11 We now review the evidence relied upon by the trial court:

On September 14, 2005, a hearing on the issue of venue was conducted. Donaghue testified that the partnership was in the business of providing legal representation. Transcript, pp. 20–21. He stated, "Representing clients is essential to my business because I'm a lawyer. That's what I do." Transcript, pp. 25–26. Donaghue testified that less than three percent (3%) of the cases handled by him had contact with Philadelphia. Transcript, p. 15. Those cases represent three percent (3%) of the partnership's gross revenue since 1999. The percentage of net revenue was not provided. Transcript, pp. 9, 18. The raw numbers underlying the percentages testified to and the calculations related thereto were not provided. No accounting evidence was offered to substantiate these claims.

Donaghue admitted that he has appeared and will continue to appear before the United States District Court for the Eastern District of Pennsylvania (sitting in Philadelphia) as solicitor for: Chadds Ford Township, Concord Township and Haverford Township in Delaware County. Transcript, pp. 13, 15–16.

The number of years Donaghue served as a legal representative for the township was not provided. As well, Donaghue appeared and will continue to appear in the Philadelphia County Court of Common Pleas and the Superior Court of Pennsylvania as a litigator. Transcript, pp. 16, 23–25. Further Donaghue provided an additional affidavit listing 16 cases in which he represented various parties in the federal court sitting in Philadelphia.

Donaghue's partner, James P. Bradley, Esquire ("Bradley"), submitted an affidavit indicating that income generated in 2003 and 2004 by "Philadelphia cases" amounted to "no more than 3% of the firm's overall gross revenue." The criteria for labeling matters "Philadelphia cases" were not provided (*i.e.* were these cased; initiated in Philadelphia and removed to Delaware County; litigated in Philadelphia; or involved residents of Philadelphia).

Unlike the affidavits submitted by Donaghue and Bradley, the third partner, Michael Egan's affidavit failed to provide the number or percentage of "Philadelphia cases" he handled as a partner. While the affidavit noted that "presently" Mr. Egan had no active cases in Philadelphia County, no definitive time frame was attributed to the term "presently."

Trial Court Opinion, 3/20/06, at 2–3. On appeal, Appellants confirm the veracity of this information by agreeing that approximately three to five percent of the law firm's income was derived from cases filed in Philadelphia County. Appellants' brief at 7.

¶ 12 We conclude that the trial court did not commit an abuse of discretion when it determined that the law firm's acts were of sufficient quality to meet the requisite standard. The purpose of a law firm is to

perform legal services, and the law firm concededly performed legal services in Philadelphia County. Indeed, Mr. Donaghue admitted, "Representing clients is essential to my business because I'm a lawyer." N.T. Hearing, 9/14/05, at 25–26. Representing clients is precisely what Appellants do in Philadelphia.

¶ 13 Appellants rely upon *Goodman v. Fonslick*, 844 A.2d 1252, 1253 (Pa.Super.2004).[4] In that case, we affirmed a trial court's transfer of a case to Montgomery County where the plaintiffs had instituted an action in Philadelphia County against a Montgomery County hospital. The plaintiffs had sought venue in Philadelphia County over the hospital based upon the facts that the hospital advertised in the county and owned an interest in two small physician's offices in Philadelphia. As noted, under *Purcell*, advertising is considered an incidental rather than direct act. In *Goodman*, we concluded that the mere fact that the physician's offices were located in Philadelphia did not constitute sufficient business contacts to support venue because there was no evidence that the two groups, totaling six to eight physicians, were clinics or branch offices of the hospital. Moreover, hospital care was not provided at those offices. We held that the hospital's business relationship with these small Philadelphia County practice groups was incidental to its main goal of providing hospital care.

■ ¶ 14 In the present case, there could be no clearer example of an act that is performed in furtherance of its business purpose than a law firm entering a county to represent a client. The sole objective of this law firm is to represent people in legal actions, and that action was precisely what Appellants did in Philadelphia County. Appellants counter that the firm's purpose was to provide legal services to clients **in Delaware County** where it conducted ninety-five to ninety-eight percent of its business. However, the fact that it represented clients in Delaware County, which would permit that county to exercise venue, does not defeat the fact that the law firm entered Philadelphia County in direct furtherance of its business purpose, thus allowing for venue in Philadelphia County.

¶ 15 That venue was present in Delaware County did not negate the existence of venue in Philadelphia County. Otherwise, there would be only one county with venue over an action against a corporation or partnership, which would be in direct conflict with the language of the pertinent rules. The rules confer venue in "a" county where the business entity regularly conducts business rather than "the" county where the entity regularly conducts business.

---

**4.** Appellants also rely upon *Singley v. Flier*, 851 A.2d 200 (Pa.Super.2004), wherein the plaintiff sued a university in Philadelphia County. The university had only one campus, which was located in Delaware County, where it provided its educational services. All of the university's educational facilities and classrooms were located on that campus, and the university did not own or operate any real estate in Philadelphia. In Philadelphia, it had conducted a limited number of classes and a nursing practicum, but it did not maintain a campus in that county. We stated, "Although one cannot dispute that the instruction of students is [the university's] main purpose, we find that these limited classes and practical experience offered in Philadelphia County, *but not at a satellite campus, do not satisfy either the quality or quantity test." Id.* at 203. Although these educational activities did appear to further the entity's main purpose, thereby meeting the quality test *ipso facto, Singley,* when read as a whole, clearly rests on the fact that the Philadelphia activities of the university were so limited and dwarfed by its educational facilities and activities in Delaware County that the quantity aspect of the venue test was not satisfied. Here, both legs of the venue test are met.

¶ 16 Herein, this law firm could not exist unless it provided legal services to clients, and the acts that Appellants performed in Philadelphia were concededly **essential** to the law firm's existence. The acts were not incidental acts, such as advertising, hiring personnel, conduct of an unrelated enterprise such as selling insurance, training personnel, or referrals to and from other law firms in Philadelphia County. The law firm entered Philadelphia County in furtherance of its only business objective, which was to provide legal services to clients.

¶ 17 Thus, the trial court properly found the acts were of sufficient quality to confer venue over this action in Philadelphia County because the law firm practiced law in Philadelphia. *Accord Monaco, supra* at 143, 208 A.2d at 256 (where taxi company entered Philadelphia County to drop off customers, trial court erred in failing to find that it regularly conducted business there since "the acts of driving into Philadelphia County at the request of customers and collecting fares there were acts directly essential to and in furtherance of corporate objects and, therefore, were of sufficient quality"). *Cf. Fritz, supra* (fact that students from Philadelphia County traveled to Delaware County to attend defendant school, which was located in Delaware County, did not mean that school performed acts in furtherance of its main purpose in Philadelphia); *Masel v. Glassman*, 456 Pa.Super. 41, 689 A.2d 314 (1997) (hospital provided all of its medical services, which was its business objective, in Bucks County and patients from Philadelphia County traveled to its facilities in Bucks County).

¶ 18 We also conclude that the trial court did not abuse its discretion in finding that the law firm's acts were of sufficient quantity to sustain venue. Appellants have conceded that over the course of many years it has conducted approximately three to five percent of its legal services in Philadelphia. As the Supreme Court stated in *Monaco, supra* at 143, 208 A.2d at 256, "It must be remembered that it is the word 'regularly' which we are construing and not 'principally.' A corporation [or partnership] may perform acts 'regularly' even though these acts make up a small part of its total activities."

¶ 19 The law firm consistently has generated approximately three to five percent of its gross business revenue from cases in Philadelphia County. In *Canter v. American Honda Motor Corp.*, 426 Pa. 38, 231 A.2d 140 (1967), the Pennsylvania Supreme Court concluded that where a corporation regularly conducted one to two percent of its total business in a county, that percentage was sufficient to satisfy the quantity aspect of the venue test.

¶ 20 In view of the facts herein, we cannot conclude that the trial court committed an abuse of discretion in determining that Appellants' contacts with Philadelphia were of sufficient quality and quantity to find that they regularly conducted business in that county.

¶ 21 Order affirmed.

¶ 22 Judge KLEIN files a Concurring Opinion.

CONCURRING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that the defendant law firm has satisfied the "quality" test for determining whether the firm regularly conducts business in Philadelphia County. I also agree that under the case law, we cannot say that the trial court abused its discretion in concluding that the law firm's acts in Philadelphia County satisfy the "quantity" test as well.

¶ 2 I write separately to note that in my opinion, there are no clear standards to

guide the trial court in determining whether or not the "quantity" test has been met. Our case law is inconsistent and lacks specific guidelines for determining the appropriate quantity of contacts necessary to obtain venue over a corporation under Pa. R.C.P. 2179(a)(2). Whether or not the "quantity" test has been met is determined more by the gut feeling of the trial judge rather than by any objective standard. I note this because I believe that the matter at least merits clarification by a Court *en banc*, if possible.

¶ 3 In this case, a suburban-based law firm derives only 3–5% of its total revenue from its work in Philadelphia County, and most of this work is representing suburban clients. As part of the representation of suburban clients, the attorneys sometimes have to come into Philadelphia County. Sometimes it is because the suburban client was sued in Philadelphia, so that is not exactly voluntary work. Sometimes they have to come into Philadelphia County because that is where the federal court that handles Delaware County matters sits. We certainly would not reverse the trial court if it had determined that this amount of business was small enough to *fail* the "quantity" test. As our case law has developed, it would be the rare case where we could say that the trial court erred no matter which way it ruled on the "quantity" test. I do not believe it serves justice to have such a loose standard. In many of these cases, it would be just as easy to achieve justice by going to the Atlantic City casinos and betting "red" or "black" on roulette as by having a judicial determination.

¶ 4 As the majority notes, "quantity of acts" means those that are so continuous and sufficient as to be considered habitual. A single act is not enough. The determination of what quantity is sufficient to confer venue must be made on a case-by-case basis. *See Purcell v. Bryn Mawr Hosp.*, 525 Pa. 237, 579 A.2d 1282, 1285 (1990); *Kisak v. Wheeling Park Comm'n*, 898 A.2d 1083, 1086 (Pa.Super.2006), *app. denied*, 590 Pa. 669, 912 A.2d 838 (2006). The only problem is that there is no guidance in a close case. Is it 2%? 4%? 6%? 8%? It seems to depend less on the type of business than on the attitude of the trial judge.

¶ 5 Here, the trial court suggests that the "quantity" test is satisfied because the defendant law firm, which is located in Delaware County, has provided and is likely to continue providing legal services to its clients in Philadelphia courts. (Trial Court Op., 3/30/06, at 5.) Perhaps. However, the trial court does not address the actual amount of work performed by the defendants in Philadelphia County. It is undisputed that only 3–5% of the law firm's gross revenue over a ten-year period was derived from litigation in Philadelphia.

¶ 6 In reviewing the case law, there are some cases that say 1–2% of contacts in a particular county is enough to meet the "quantity" test, while others say 3% is *not* enough. A sampling of the relevant cases follows.

**Cases that do not meet the "quantity" test.**

· *Singley v. Flier*, 851 A.2d 200 (Pa.Super.2004): The plaintiff sued Villanova University in Philadelphia County on the ground that it held a few classes and a nursing practicum in Philadelphia. Notwithstanding the number of Philadelphia students who attend Villanova, because the university did not have a campus in Philadelphia, nor did it own or operate any real estate there, this Court held there was no proper venue in Philadelphia and affirmed the transfer to Delaware County. *Id.* at 203.

· *Goodman v. Fonslick*, 844 A.2d 1252 (Pa.Super.2004): This Court held that the defendant hospital's activities of providing a limited number of medical services to patients in Philadelphia was insufficient to confer venue in Philadelphia County. The Goodman Court emphasized that the hospital's corporate objective was to provide medical services to patients in Montgomery County, where the hospital is located.. *Id.* at 1255. That seems similar to the instant case, where the objective of the law firm is to provide legal services to Delaware County clients and only go into Philadelphia when circumstances require it.

· *Masel v. Glassman*, 456 Pa.Super. 41, 689 A.2d 314 (1997): This Court held that venue was improper in Philadelphia County where the defendant medical practice, which is located in Bucks County, derived only 3% of its gross revenue from Philadelphia residents, even though it also derived 20% of its revenue from Philadelphia third-party payors. *Id.* at 318. This is less activity than in the instant case.

· *Mathues v. Tim–Bar Corp.*, 438 Pa.Super. 231, 652 A.2d 349 (1994): This Court upheld a change of venue from Montgomery County to York County in an employment dispute between a salesman and his employer. The plaintiff sued his employer, which had offices in York and Adams Counties, for breach of contract in Montgomery County. The Court held that venue was improper there because the company's acts in Montgomery County were "isolated and limited" and only two or three sales transactions took place in Montgomery County. *Id.* at 351.

· *Battuello v. Camelback Ski Corp.*, 409 Pa.Super. 642, 598 A.2d 1027 (1991): This Court affirmed the transfer of venue from Philadelphia County to Monroe County in a case against a Monroe County ski resort. As a basis for venue in Philadelphia, the plaintiff asserted, among other things, ·that a Philadelphia-based company, Eastern Ski Tours, regularly sent its customers there. In concluding that the quantity test was not met, the Court noted that "only five percent of Eastern's customers are from Philadelphia" and "less than one percent of Camelback's business consists of skiers sent by Eastern." *Id.* at 1030. The Court also noted that "the number of Philadelphia season pass holders is extremely small in relation to the total number of season passes sold." *Id.* at 1029. Once again, the activity in the instant case is equally isolated.

### Cases that meet the "quantity" test.

· *Canter v. American Honda Motor Corp.*, 426 Pa. 38, 231 A.2d 140 (1967): The Supreme Court concluded that a car dealership that regularly conducted 1–2% of its total business in Philadelphia County was sufficient to satisfy the quantity test. Although the dealership was located in Delaware County, its acts of driving into Philadelphia to demonstrate cars and consummate sales were sufficient, even though they amounted to only 1–2% of its total business. *Id.* at 142–43.

· *Monaco v. Montgomery Cab Co.*, 417 Pa. 135, 208 A.2d 252 (1965): The Supreme Court concluded that a taxi company that collected 5–10% of its gross revenue from customer drop-offs in Philadelphia was sufficient to sustain venue in Philadelphia County. Although the company was prohibited from picking up passengers in Philadelphia, it was permitted to pick them up in Montgomery County and drop them off in Philadelphia. The Court stated,

"A corporation may perform acts 'regularly' even though these acts make up a small part of its total activities." *Id.* at 256. This is similar to the instant case.

¶ 7 The cases are imprecise in their discussion of the appropriate quantity of contacts. Rather than focus on raw percentages, some courts compare the number and type of contacts with the company's overall business purpose, employing a hybrid "quality-quantity" analysis. For example, in *Singley, supra,* in affirming the venue transfer to Delaware County, this Court concluded:

> Although one cannot dispute that the instruction of students is Villanova's main purpose, we find that these limited classes and practical experience offered in Philadelphia County, but not at a satellite campus, do not satisfy either the quantity or quality test.

851 A.2d at 203; *see also Goodman, supra.* Under this standard, the law firm in this case would not be subject to venue in Philadelphia County.

### Conclusion

¶ 8 In my view, none of the cases offers any clear guidance for trial courts in determining what quantity of contacts is sufficient to confer venue over a corporation under Rule 2179(a)(2). It appears that a plaintiff can file suit against a corporate defendant in any county where it conducts any amount of business, even if it is as little as 1 or 2%. I am concerned about the precedent we are setting by allowing venue to stand in Philadelphia County against a primarily suburban law practice, where it is undisputed that none of the activities giving rise to the litigation arose in Philadelphia. We may be giving plaintiffs too much leeway in selecting a forum in which to litigate their claims against a corporation.

¶ 9 In light of the conflicting case law, I believe this issue should be considered by a Court *en banc.* For this reason, I am compelled to concur.