J-S11034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEVEN CURRY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF S.C. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 1960 EDA 2023 |
| THE GEO GROUP, INC., GEO REENTRY SERVICES, LLC, GEO OPERATIONS, INC, GEO SECURE SERVICES, LLC, GEO CORRECTIONAL HOLDINGS, INC, DAVID BYRNE, AND BRICK TRIPP | : : : : : : : | |

Appeal from the Order Entered June 29, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 211101053

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 07, 2024**

In this wrongful death and negligence action, Appellant, Steven Curry, Individually and as Administrator of the Estate of S.C., appeals from the order sustaining the preliminary objections of Appellees, The GEO Group, Inc., GEO Reentry Services, LLC, GEO Operations, Inc, GEO Secure Services, LLC, GEO Correctional Holdings, Inc, David Byrne, and Brick Tripp, and transferring

_____

[*] Retired Senior Judge assigned to the Superior Court.

venue in this matter from Philadelphia County to Delaware County.[1] Upon

review, we reverse and remand.

The trial court summarized the procedural history of this matter as

follows:

> On November 21, 2021, Plaintiff (hereinafter "Appellant") Steven Curry, Individually, and as Administrator of the Estate of [S.C.], commenced the instant matter [by filing a writ of summons in Philadelphia County]. On March 11, 2022, Appellant filed the Complaint, followed on April 7, 2022 by Appellant's First Amended Complaint. On April 27, 2022, [Appellees] filed Preliminary Objections on venue to Plaintiff's First Amended Complaint. [Appellant] filed a Second Amended Complaint on May 16, 2022, with [Appellees] again filing Preliminary Objections in response on June 6, 2022. [Appellant] filed a Third Amended Complaint on June 24, 2022, and [Appellees] filed Preliminary Objections to Plaintiff's Third Amended Complaint on July 13, 2022. On December 7, 2022, this [c]ourt sustained [Appellees'] Preliminary Objections and transferred the matter to the Court of Common Pleas of Delaware County.
>
> On December 8, 2022, this [c]ourt vacated the December 7, 2022 Order and ordered both parties to conduct discovery and file supplemental briefs on the issue of improper venue. On June 29, 2023, this [c]ourt issued an Order transferring the case to the Court of Common Pleas of Delaware County.

Trial Court Opinion, 10/27/23, at 1-2. This timely appeal followed. Both

Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant fashioned the following issues for our review:

> 1. Did the Trial Court abuse its discretion when it sustained [Appellees'] Preliminary Objections and ordered that the lawsuit must be transferred to Delaware County?

_____

[1] This matter arises from the death of S.C. in October 2021, while he was housed at the George W. Hill Correctional Facility in Delaware County.

2. Did the Trial Court abuse its discretion when it sustained [Appellees'] Preliminary Objections and ordered that the lawsuit must be transferred to Delaware County, even though it found that at least three separate [Appellees] regularly conduct business in Philadelphia County?

3. Did the Trial Court abuse its discretion when it sustained [Appellees'] Preliminary Objections and ordered that the lawsuit must be transferred to Delaware County, where, at the time this lawsuit was initiated, [Appellees] managed two facilities in Philadelphia County and generated millions of dollars in annual revenue from them?

Appellant's Brief at 6 (suggested answers omitted).

Appellant argues that the trial court abused its discretion by improperly sustaining Appellees' preliminary objections seeking a change of venue and transferring the matter to Delaware County. *See* Appellant's Brief at 21-28. Appellant contends venue lies in Philadelphia County because Appellees have regular business contacts within Philadelphia County of a sufficient quality to establish proper venue. *See id*. at 23-26. Further, Appellant asserts that Appellees have a sufficient quantity of regular business contacts in Philadelphia such that venue there is proper. *See id*. at 26-27. Appellant posits that the trial court committed an error of law in making its determination and sustaining the preliminary objections.

In its Rule 1925(a) opinion, the trial court agrees with Appellant's conclusion that the court's earlier legal determination to transfer venue was improper, reasoning that "Venue is proper in Philadelphia, as at least three Appellees — GEO Reentry, GEO Group, and GEO Correctional — regularly conduct business in Philadelphia of sufficient quality and quantity." *See* Trial

- 3 -

Court Opinion, 10/27/23, at 4. We agree with the conclusion reached by the trial court in its opinion.

We conduct our review mindful of the following standard:

> The trial court is vested with discretion in determining whether to grant a preliminary objection to transfer venue, and we shall not overturn a decision to grant or deny absent an abuse of discretion. An abuse of discretion occurs when there was an error of law or the judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill will.

*Scarlett v. Mason*, 89 A.3d 1290, 1292 (Pa. Super. 2014). (citations and quotation marks omitted).

While "[a] plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper," we observe that "a plaintiff's choice of venue is not absolute or unassailable." *Zappala v. James Lewis Group*, 982 A.2d 512, 518 (Pa. Super. 2009) (citation omitted). A civil action may be brought against all defendants in any county in which venue may be laid against any one of the defendants "under the general rules." Pa.R.Civ.P. 1006(c)(1). Rule 1006 governs change of venue and permits a defendant to petition for change of venue despite the fact that the venue chosen by the plaintiff is proper.

The Court in *Zappala* addressed the components of a venue challenge under Pa.R.Civ.P. 1006(e) as follows:

> [P]ursuant to Rule 1006(e), the defendant may challenge venue as improper by preliminary objection. This is the exclusive method to challenge venue as "improper." A Rule 1006(e) challenge to improper venue by preliminary objection has two key components: one substantive and one procedural. Substantively,

the basis for a Rule 1006(e) challenge is the defendant's belief that venue is "improper" in the plaintiff's chosen forum. The meaning of the word improper, as used in subsection (e), is … shaped by Rules 2179 (providing where a personal action against a corporation may be brought), 1006(a) and (b) (providing where an action may be brought) and ... 1006(c). These rules exclusively address where venue properly may be laid at the time the suit is initiated. Thus, question of improper venue is answered by taking a snapshot of the case at the time it is initiated: if it is "proper" at that time, it remains "proper" throughout the litigation.

*Id*. (some parentheticals omitted).

As we recently explained in ***Watson v. Baby Trend, Inc.***, 308 A.3d 860 (Pa. Super. 2024):

Rule 2179 governs venue in cases against corporate entities. In relevant part, Rule 2179 holds that "a personal action against a corporation or similar entity may be brought in and only in ... a county where it regularly conducts business[.]" [Pa.R.Civ.P.] 2179(a)(2). In the venue context, "regularly" does not mean "principally," and a defendant "may perform acts regularly even though these acts make up a small part of its total activities." ***Hangey*** [***v. Husqvarna Prof'l Products, Inc.***, 304 A.3d 1120, 1128 (Pa. 2023)] (citation and emphasis omitted).

*Id*. at 864-65. In determining whether venue is proper under Rule 2179, courts employ a quality/quantity analysis. ***See Id***. at 865.

The ***Hangey*** Court elucidated:

The term 'quality of acts' means those directly furthering, or essential to, corporate objects; they do not include incidental acts. ... By 'quantity of acts' is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough. ... Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with.

***Hangey***, 304 A.3d at 1130-31 (citations omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the thoughtful opinion authored by the Honorable Denis P. Cohen of the Court of Common Pleas of Philadelphia County, dated October 27, 2023. We agree with Appellant that venue is proper in Philadelphia County and that the trial court abused its discretion in entering an order sustaining the preliminary objections and determining that the matter should be transferred to Delaware County.

As the trial court ably explained in its subsequent opinion, the quality of Appellees' acts in Philadelphia were sufficient to find venue in that location:

> [Appellees'] quality of acts in Philadelphia establishes venue as those acts directly further or are essential to corporate objects. [**Kisak v. Wheeling Park Comm'n**, 898 A.2d 1083, 1086 (Pa. 2006)]. As stated above, at least three [Appellees] regularly conduct business in Philadelphia. Specifically, GEO Reentry manages two facilities in Philadelphia — Erie Outpatient and the Philadelphia Residential Reentry Center. **See** Deposition of Amber Martin, Executive Vice President of Contract Administration, Corporate Designee of The GEO Group, GEO Reentry Services, GEO Secure Services, GEO Operations, and GEO Correctional Holdings at 22:6-14, 36:2-25. Erie Outpatient, which is managed by GEO Reentry, is a daily reporting center that supplies former inmates with "counseling, life skills, training to help find jobs, transportation ... anything dealing with getting back into the community.["] **See id**. at 26:5-10. There are six (6) full-time staff members. **See id**. at 24:9-15. Erie Outpatient was operational and generating revenue in 2021 when the lawsuit was filed. **See id**. at 22:6-14.
>
> GEO Reentry also oversees and manages a second facility in Philadelphia, the Philadelphia Residential Reentry Center (the "Philadelphia Center"). **See id**. at 36:2-25; **see also** Supplemental Affidavit of Amber Martin, ¶4-5, March 28, 2023. The Philadelphia Center has capacity to treat 70 patients and was operating at or near capacity through 2021. **See** Martin Dep., at 48:6-13. GEO Reentry is responsible for hiring personnel at the

Philadelphia Center and has 23 full-time GEO Reentry staff members running the facility. *See id*., at 19:9-11, 37:5-11, 50:1-4, 51:10-12. Like Erie Outreach, the Philadelphia Center was operational and generating revenue in 2021. *See id*., at 17:18-21. It is owned by Community Education Centers, Inc., which is another entity wholly owned by the GEO Group. *See id*. at 33:6-12. However, notwithstanding its ownership, revenue from the Philadelphia Center is "allocated to GEO Reentry Services" as GEO Reentry operates and runs the facility. *See* Martin Supp. Aff., at ¶4-5. Moreover, an Intercompany Services Agreement shows that [Appellee], GEO Operations, Inc., manages some operations at the Philadelphia Center and subcontracts certain responsibilities to GEO Reentry. *See* Intercompany Services Agreement, May. The Intercompany Agreement further states [Appellee] GEO Operations, Inc. is an intermediary entity that subcontracts work to be performed at the Philadelphia Center. *See id*. At the end of the Intercompany Agreement are three separate signature lines for Community Education Centers, GEO Reentry, and GEO Operations, respectively. Each line was signed in the name of John J. Bulfin, who is listed under an identical title — Vice President and Secretary — of each of the respective entities. *See id*., at 3. There are no other signatories. *See id*., at 3.

GEO Group regularly conducts business in Philadelphia, as it wholly owns Community Education Centers, the entity that owns the Philadelphia Center, and contracts with Erie Outreach via Minsec, which is "an entity within the GEO Group." *See* Martin Dep., at 25:10-20, 30:6-10. In addition, GEO Group posts job openings for positions in Philadelphia, and workers employed by a company within GEO Group can be "shared among the different entities within GEO Group," pursuant to a Shared Employment Agreement. *See id*., at 45:1-23, 55:15-56:12. This is another avenue by which the GEO Group regularly conducts business in Philadelphia, as the GEO Reentry employees working in Philadelphia are effectively employees of the GEO Group as well. *See id*. For example, the GEO Group provides common benefits and retirement plans for all employees at its companies. *See* 2021 GEO Group Annual Report.

Finally, GEO Correctional operates in Philadelphia, as all the executives and officers of companies within the GEO Group are employed by GEO Correctional, including the officers and executives that oversee Erie Outpatient and the Philadelphia Center. *See* Martin Dep., at 39:4-15. None of the companies

within GEO Group, including those operating in Philadelphia, could conduct business without the leadership of GEO Correctional, as "all the corporate people" are ultimately employed by GEO Correctional. *See id*., at 39:4-15. Furthermore, operation of Erie Outpatient and the Philadelphia Center directly further the business objective of GEO Reentry, GEO Group, and GEO Correctional because the GEO Group, through these various entities, is in the business of operating secure facilities along with "residential reentries and day reporting centers" for life after incarceration and generates revenue by doing so. *See id*., at 30:13-18. Both facilities in Philadelphia further the main business objective of the GEO Group as they provide reentry services, counselling, and rehabilitation for life after incarceration.

On page sixteen (16) of the 2021 GEO Group Annual Report, under the title "GEO CONTINUUM OF CARE: REHABILITATOR OF LIVES," the GEO Group touts "The GEO Continuum of Care — an innovative and award-winning initiative" providing "enhanced in-custody rehabilitation ... integrated with post-release support services." *See* 2021 GEO Group Annual Report. The Report emphasizes that this "Continuum of Care" is "aimed at reducing recidivism rates... and improving the quality of life for released individuals," illustrating the inextricably intertwined connection between the various GEO Group entities addressing incarceration and life after incarceration. *See* 2021 GEO Group Annual Report.

Trial Court Opinion, 10/27/23, at 4-6.

Moreover, the trial court further recognized that the quantity of

Appellees' contact allows for venue in Philadelphia:

Venue is proper in Philadelphia as [Appellees'] contacts are sufficiently continuous to be "habitual." There is sufficient quantity of contacts, as GEO Reentry operates the Erie Outpatient and Philadelphia Center facilities on a daily basis. *See* Martin Dep. 48:1-5, 49:22-25; *see also Kisak*, 921 A.2d at 1085. [Appellees] suggest in their Corporate Designee's original affidavit that they cannot be found to do a sufficient quantity of business in Philadelphia because they derive only 0.6% of their total revenue from Philadelphia. *See* Affidavit of Amber Martin, ¶ 13, June 2, 2022. However, the GEO Group operates 106 secure facilities worldwide. *See* 2021 GEO Group Annual Report. Therefore, any given facility will account for only a small portion

of total revenues, and [Appellees'] argument as to proportionality would allow them to escape venue in nearly every county in which they operate.  Accordingly, the focus of the inquiry is on whether the contacts are direct and habitual, not on the percentage of revenue derived from the county.  ***See*** [***Zampana-Barry v. Donaghue***, 921 A.2d 500, 503 (Pa. Super. 2007)].

The quantity of [Appellees'] contacts is sufficient for venue, and any argument on percentage of overall revenue fails, as it did in the factually similar case of ***Hangey v.*** [***Husqvarna Prof'l Products, Inc.***], 247 A.3d 1136, 1139 (Pa. Super. [] 2021).  In ***Hangey***, venue-related discovery revealed that the Husqvarna Group, one of the [d]efendants, was effectively a non-existent entity that acted as a marketing device for a number of Husqvarna-branded corporate entities, including Husqvarna Professional Products ("HPP"), one of the other named defendants in the case.  ***Id***.  GEO Group's Corporate Designee testified that GEO Group functions in a similar manner, with GEO Group being used as a "trade name" and parent entity for all other GEO-branded entities, including GEO Reentry, GEO Correctional, and GEO Operations, to name a few.  ***See*** Martin Dep., at 56:3-12.  Moreover, in ***Hangey***, the Husqvarna Defendants argued that venue was improper in Philadelphia because HPP was a multi-billion-dollar corporation that earned .0005% of its revenue from its Philadelphia sales, which totaled $75,310.  ***Hangey***, 247 A.3d at 1139.  Nonetheless, the Superior Court held venue to be proper in Philadelphia, ruling that HPP's contacts satisfied the quantity prong of the venue test.  As to that prong, the Superior Court found that the trial court erred in relying almost exclusively on the percentage of the defendant's business occurring in Pennsylvania.  ***Id***. at 1142.  In reviewing the totality of the evidence, the Superior Court ruled that HPP's Philadelphia contacts — including an authorized dealer in Philadelphia and $75,310 of products sold through that dealer in Philadelphia — were "sufficiently continuous so as to be considered habitual."  ***Id***. (*quoting* ***Zampana-Barry***, 921 A.2d at 504).  Here, GEO Reentry's annual revenue of $3,400,000 in Philadelphia is far greater than the $75,310 that was sufficient in ***Hangey***, and their operation of two facilities year-round is continuous and habitual, far more than the "one authorized dealer" that was acceptable in ***Hangey***.

Trial Court Opinion, 10/27/23, at 7-8 (footnote omitted). We agree with the trial court's analysis and adopt it as our own.[2]

Specifically, we agree with the trial court that the quality of regularly conducted business in Philadelphia is sufficient to find venue proper as Appellees GEO Reentry, GEO Group, and GEO Correctional are involved in the operation of Erie Outpatient and the Philadelphia Residential Reentry Center, which are both located in Philadelphia and directly further the business objectives of GEO Reentry, GEO Group, and GEO Correctional Holdings. Likewise, we agree that the quantity of corporate contacts is sufficient to find venue proper in Philadelphia County in that the business activity revenue derived from the operation of the two facilities in Philadelphia was in excess of $3 million per year. Consequently, we are constrained to conclude the trial court initially committed an error of law and abused its discretion by sustaining the preliminary objections seeking a transfer of venue. Therefore, we conclude that Judge Cohen's opinion appropriately requests that the trial court's order sustaining preliminary objections and transferring venue to Delaware County be reversed and the case remanded.

_____

[2] The trial court relied upon this Court's holding in **Hangey** and properly noted that our Supreme Court had granted petition for allowance of appeal and disposition on the appeal was pending. **See** Trial Court Opinion, 10/27/23, at 7 n.2. However, as cited above, our Supreme Court has since filed its disposition, which affirmed this Court's holding, thereby providing additional support to our determination herein.

Accordingly, we reverse the trial court's June 29, 2023 order sustaining preliminary objections and transferring venue, on the reasoning set forth in the trial court's reflective opinion.

Order reversed.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2024