J-A14005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MYNECA OJO, AS ADMINISTRATRIX OF THE ESTATE OF ALLON JEFFREY OFFORD, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 2037 EDA 2024 |
| HANOVER FOODS CORPORATION, HANOVER FOOD DISTRIBUTORS, INC., HANOVER FOOD EXPORTS, LLC, DURAVANT, LLC, KEY TECHNOLOGY, INC., ABC CORPORATION 1, ABC CORPORATION 2 | : : : : : : : | |

Appeal from the Order Entered July 18, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  240102875

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED SEPTEMBER 25, 2025**

Myneca Ojo, as Administratrix of the Estate of Allon Jeffrey Offord, Deceased, appeals from the order of the Court of Common Pleas of Philadelphia County sustaining preliminary objections for lack of venue and transferring the case to York County. Ojo argues that the trial court abused its discretion in transferring venue because Hanover Foods Corporation

_____

[*] Retired Senior Judge assigned to the Superior Court.

("Hanover Foods")[1] "regularly conducts business" in Philadelphia County. After careful review, we conclude that the trial court did not abuse its discretion in transferring venue to York County. Thus, we affirm.

The trial court set forth the relevant procedural and factual history.

> On January 25, 2024, [Ojo] filed a Complaint in the Philadelphia County Court of Common Pleas alleging negligence, strict liability, wrongful death, and survival action against Defendants with joint and several liability. In the Complaint, [Ojo] averred that a defective bean hopper machine [at Hanover Foods' facility in York County] caused [Offord's] death. [While attempting to manually unclog the beans Offord fell into the hopper headfirst and beans continued to pour into the hopper burying and ultimately suffocating him.] [Ojo] also averred that all Defendants regularly conduct business in Philadelphia County. **See** Complaint at 1-67.
>
> On March 6, 2024, Hanover Foods Corporation filed Preliminary Objections to [Ojo's] Complaint arguing that Philadelphia County was an improper venue for the case. On April 5, 2024, the trial court issued a Rule to Show Cause why Hanover Foods['] [] Preliminary Objections should not be granted as to the issue of venue and permitted the parties to conduct a period of discovery and submit supplemental briefs.
>
> On April 12, 2024, Duravant LLC and Key Technology, Inc. also filed Preliminary Objections to [Ojo's] Complaint arguing that Philadelphia County was an improper venue for the case. On July 1, 2024, the trial court issued a Rule to Show Cause why Duravant LLC and Key Technology, Inc[.]'s Preliminary Objections should not be granted as to the issue of venue and permitted the parties to conduct a period of discovery and submit supplemental briefs.

_____

[1] Although Ojo sued various corporate entities, including Hanover Foods Corporation, Hanover Food Distributors, Inc., Hanover Food Exports LLC, Duravant LLC, and Key Technology, Inc., she only appealed the trial court's order as it pertained to Hanover Foods Corporation. **See** Concise Statement, 8/21/24, at ¶¶ 1-5.

That period of discovery uncovered [] the following facts: Big-box retailers such as Walmart, Acme Markets, Inc., The Giant Company, and ShopRite order products from Hanover Foods [] and indicate to what destination outside of Philadelphia County Hanover Foods [] should have the products shipped. Though Hanover Foods [] is the designated Importer of Record, Hanover Foods [] hires shipping companies to pick up the product from Hanover Foods['] subsidiary in Guatemala, to transport the product from Guatemala to the port of Philadelphia, and then to transport the product to the indicated destination which is either Hanover Foods['] [] facility or its distribution center located outside of Philadelphia County or the big-box retailers' facility or distribution center located outside of Philadelphia County. ***See*** Recher's Affidavit and Deposition; Smith's Affidavit; Koerper's Affidavit.[2]

Big-box retailers then decide [] which of its own retail stores the big-box retailer will ship the product. Big-box retailers then ship Hanover Foods [] products from their distribution centers located outside of Philadelphia County to its retail stores in Philadelphia County. The chosen Philadelphia County retail stores then place Hanover Foods['] [] product on its shelves. ***See*** Recher's Affidavit and Deposition; Smith's Affidavit; Koerper's Affidavit.

Defendant Key Technology, Inc. sold spare parts to one consumer located in Philadelphia County in four single transactions over an eight-year period, *i.e.*, once in 2016, 2019, 2022, and 2023. The revenue received from those four single transactions constituted .007% of Defendant Key Technology, Inc.'s total revenue from sales in Pennsylvania over a similar time period. ***See*** Leighty Affidavit at 10-11.[3]

Trial Court Opinion, 10/22/24, at 1-3.

---

[2] Olga N. Recher is the Resource Planner & Inventory Control Manager of Hanover Foods. Russel Smith is the Vice President of Retail Sales & Marketing of Hanover Foods. Stephen Koerper produced an affidavit on Appellant's behalf stating that he bought Hanover Foods' products at various big box retailer stores in Philadelphia County.

[3] Daniel Leighty is the Vice President of Sales of Key Technology, Inc.

On July 18, 2024, the trial court sustained the preliminary objections, finding that Philadelphia County was an improper venue because Hanover Foods does not "regularly conduct business" there, and transferred the case to York County. Ojo timely appealed and filed a court-ordered concise statement of matters complained of on appeal. *See* Pa.R.A.P 311(c) ("An appeal may be taken as of right from an order in a civil action or proceeding changing venue[.]"); Pa.R.A.P. 1925(b). The trial court filed an opinion in support of its decision. *See* Pa.R.A.P. 1925(a).

Ojo raises a single issue for our review.

> Did the trial court err as a matter of law or otherwise abuse its discretion in ordering the transfer of venue of this case from Philadelphia to York County based on the trial court's conclusion that defendant Hanover Foods does not regularly conduct business in Philadelphia County, despite having imported over $75 million of its own foodstuff products from its own wholly-owned subsidiary as official Importer of Record through the [p]ort of Philadelphia located in Philadelphia County and despite the fact that Hanover Foods products are widely available for purchase from retailers located in Philadelphia County?

Appellant's Brief, at 7.

When reviewing a trial court's decision to sustain preliminary objections as to venue and transferring the case, it is well-established that:

> The rules governing venue are prescribed in the Pennsylvania Rules of Civil Procedure. Pennsylvania Rule of Civil Procedure 1006(d)(1) gives trial courts considerable discretion to determine whether to grant a change of venue, and such a determination will not be disturbed on appeal absent an abuse of discretion. *See* [*Commonwealth v.*] *Purcell*, 579 A.2d [1282,] 1284 [(Pa. 1990)]. "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable,

- 4 -

or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record." ***Zappala v. Brandolini Prop. Mgmt., Inc.***, 589 Pa. 516, 909 A.2d 1272, 1284 (2006). An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion; "[i]f there exists any proper basis for the trial court's decision to transfer venue, the decision must stand." ***Id.*** When resolving questions of law, however, our standard of review is *de novo* and our scope is plenary. ***See id.*** at 1280.

***Hangey v. Husqvarna Pro. Prods., Inc.***, 304 A.3d 1120, 1141 (Pa. 2023).

"Rule 1006(b) specifies actions against corporations and similar entities 'may be brought in and only in the counties designated by' Rule 2179." ***Id.*** (quoting Pa.R.Civ.P. 1006(b)).

Pennsylvania Rule of Civil Procedure 2179 states, in pertinent part:

**(a) General Rule.** Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in a county where

(1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a).

York County meets the criteria for subsections (1), (3), and (4) in this matter.[4] At issue in this case is whether the trial court abused its discretion in finding that Hanover Foods does not "regularly conduct[] business" in Philadelphia County.

"[W]hether a corporation 'regularly conducts business' in a particular county depends upon the 'quality' and 'quantity' of the business conducted within the county." ***Mendoza-Colon v. Luscomb, Inc.***, 335 A.3d 1207, 1213 (Pa. Super. 2025). "Quality of acts will be found if an entity performs acts in a county that directly further or are essential to the entity's business objective; incidental acts in the county are not sufficient to meet the quality aspect of the test." ***Zampana-Barry v. Donaghue***, 921 A.2d 500, 503 (Pa. Super. 2007) (citation omitted). "Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct." ***Id.*** (citations omitted).

"To satisfy the quantity prong of this analysis, acts must be sufficiently continuous so as to be considered habitual." ***Hausmann v. Bernd***, 271 A.3d 486, 493 (Pa. Super. 2022) (citation and internal quotation marks omitted). "[T]he word 'sufficient' in the quantity prong refers to the acts deemed sufficient under the quality prong." ***Hangey***, 304 A.3d at 1143-44. "It is those sufficient, quality acts that must be performed regularly to satisfy the venue inquiry." ***Id.*** at 1144.

---

[4] Subsection (5) is not applicable because equitable relief was not sought.

The trial court concluded that Hanover Foods does not have quality contacts with Philadelphia County because (1) Ojo failed to prove that Hanover Foods processes, packages, and sells canned and frozen vegetables in Philadelphia County; (2) Hanover Foods has no physical presence in Philadelphia County because, although Hanover Foods is the designated Importer of Record, its imported vegetables are transported from the port to its facilities by third-party shipping companies; (3) Hanover Foods sells its products to big box retailers and ships its products to facilities or distribution centers located outside of Philadelphia County; (4) Hanover Foods' products are sold to consumers in Philadelphia County by big box retailers deciding to place Hanover Foods' products in their stores. *See* Trial Court Opinion, 10/22/24, at 8-9.

Ojo argues the trial court abused its discretion because the factual record established that Hanover Foods regularly conducted business in Philadelphia County. *See* Appellant's Brief, at 27. Specifically, Ojo asserts that Hanover Foods' importation of materials, i.e., raw vegetables, through the port of Philadelphia suffices for "quality" contacts with Philadelphia County. The gist of Ojo's argument is that although case law typically focuses on where a company sells its products and services, in this case, the focus should be on where Hanover Foods obtains its raw materials. Ojo contends there can be no sales of Hanover Foods' consumer products (canned and frozen vegetables) "without obtaining the raw materials necessary to produce, process, and manufacture those products." *Id.* at 27, 32-35. Additionally, Ojo maintains

that Hanover Foods has quality contacts with Philadelphia County because its products are continually on sale to customers in Philadelphia County at numerous retail stores. *See id.* at 28, 37-40.

In response, Hanover Foods argues that the trial court did not abuse its discretion because it is not in the shipping and transportation business, and the importation of raw vegetables is merely incidental to and aids its corporate objective of processing, packaging, and selling canned and frozen vegetables. *See* Appellee's Brief, at 20-21, 27-33. It asserts that its use of the port of Philadelphia is not necessary for its existence, as evidenced by its use of multiple ports of entry for its raw vegetables, and by the fact that although Hanover Foods stopped using the port of Philadelphia entirely as of October 10, 2023, Hanover Foods remains fully operational. *See id.* at 20-21. Further, Hanover Foods argues that the importation of vegetables to Philadelphia County and its use of third-party vendors to carry out the importation and transportation of the vegetables is at most akin to the purchase of supplies or services from Philadelphia County, which Pennsylvania courts have held are insufficient for quality contacts. *See id.* at 30-36. Additionally, Hanover Foods argues that quality contacts are not established merely because third-party big box retailers to whom Hanover Foods sells its products, choose to make Hanover Foods products available for purchase at their retail stores in Philadelphia County. *See id.* at 22, 44-48.

First, we agree with the trial court's conclusion that the importation of raw vegetables through the port of Philadelphia and the use of third-party

vendors to carry out the importation and transportation does not constitute quality contacts. As properly argued by Hanover Foods, this activity is analogous to purchasing supplies in Philadelphia County and does not establish quality contacts with Philadelphia County. "Our Supreme Court, as well as this Court, have on many occasions, held that the purchase of goods from suppliers in Philadelphia is not sufficient to meet the standard of regularly conducts business." *Smith v. Rodriguez*, 2024 WL 4969902, at *3 (Pa. Super. filed Dec. 3, 2024) (unpublished memorandum) (collecting cases).[5] Hanover Foods' activity in this case is analogous to purchasing goods from suppliers. That is, the material (the raw vegetables) required for it to produce its products (processing and packaging canned and frozen vegetables) originates at the port of Philadelphia and is transported to Hanover Foods' facility in York County. As *Smith* recognizes, Pennsylvania Courts have repeatedly held that such activity does not meet the standard of "regularly conducts business."[6]

*Zampana-Barry* offers a useful counter-example to illustrate why the importation and transportation of raw vegetables is not an activity essential

_____

[5] Pursuant to Rule 126(b), we may rely on non-precedential decisions issued after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

[6] We note that Ojo argues that the cases relied upon by Hanover Foods and the trial court are factually distinct from the present case. *See* Appellant's Brief, at 34-37; Reply Brief, at 9-12. Ojo unpersuasively focuses on superficial distinctions. More importantly, Ojo fails to support her argument by analogizing the business activity in this case with prior cases where such analogous activity satisfied the quality prong.

to Hanover Foods' business objective. There the plaintiff sued a law firm in Philadelphia County. Ninety-five to ninety-eight percent of the law firm's legal services occurred in Delaware County while only about 3% took place in Philadelphia County. *Zampana-Barry*, 921 A.2d at 504. The trial court refused to transfer the case to Delaware County and this Court affirmed. *See id.* at 501. This Court explained,

> there could be no clearer example of an act that is performed in furtherance of its business purpose than a law firm entering a county to represent a client. **The sole objective of this law firm is to represent people in legal actions, and that action was precisely what Appellants did in Philadelphia County**.

*Id.* at 505 (emphasis added). As a law firm whose sole business objective was providing legal services to clients, it furthered that objective by entering Philadelphia County and providing legal services there. *See id.* at 506. Thus, the acts were of sufficient quality to establish venue.

By contrast, here, Hanover Foods essential business objective is performed at its facility in York County—the processing and packaging of canned and frozen vegetables. While the importation and transportation of raw vegetables from the port of Philadelphia to its facility in York County certainly aids this objective, the activity is distinct from its business objective, and thus, not necessary for its existence. Therefore, we find that the trial court did not abuse its discretion in finding that these acts were not of sufficient quality to establish venue.

Next, we address the trial court's conclusion that Hanover Foods' products being sold in Philadelphia County at big box retailers does not

- 10 -

constitute quality contacts. As the trial court and Hanover Foods properly point out, **Hangey** and **Watson v. Baby Trend, Inc.**, 308 A.3d 860 (Pa. Super. 2024), are controlling on this point.

In **Hangey**, the Pennsylvania Supreme Court affirmed this Court's reversal of the trial court's order sustaining the preliminary objections of the defendant, Husqvarna Professional Products, Inc. ("HPP"); the trial court had held that Philadelphia County was an improper venue. **See Hangey**, 304 A.3d at 1124. In other words, the Pennsylvania Supreme Court held that venue properly lied in Philadelphia County. **See id.**

The direct issue on appeal was whether the trial court abused its discretion by finding that the quantity prong was not satisfied based solely on 0.005 percent of HPP's total sales occurring in Philadelphia County. **See id.** at 1130. These sales were made to consumers by HPP distributing its products to two authorized dealers in Philadelphia County. **See id.** at 1126. No party challenged the trial court's ruling that HPP, whose corporate objective was distributing consumer outdoor products to retailers, satisfied the quality prong by distributing its products *directly* to these two authorized dealers whose specific businesses were in Philadelphia County. **See id.** at 1148. In fact, contrary to Ojo's mischaracterization that **Hangey** "recogniz[ed] that the defendant's sale of its products in a given county satisfies the 'quality' prong[,]" Appellant's Brief, at 37 (citing **Hangey**, 304 A.3d at 1148), the HPP product sales at big box retailers in Philadelphia County were actually excluded from the analysis of quality activity, since HPP would ship its products to big

box retailers' distribution centers outside Philadelphia County, and those retailers alone would decide where they were distributed (including in Philadelphia). *See Hangey*, 304 A.3d at 1125.

Further, the *Hangey* court recognized that product sales from authorized dealers are distinct from product sales at big box retailers in that authorized dealers have a specific single location, and the distributor ships the products directly to the dealer in Philadelphia County rather than a big box retailer who has numerous stores within and outside of Philadelphia County and receives the products at their distribution centers outside Philadelphia County, and then decides which store to send the products. *See id.* at 1148-49. Thus, contrary to Ojo's assertion, *Hangey* did not recognize that all types of sales of a distributor's products in a county constitute quality contacts.

The trial court aptly summarized the relevant facts and reasoning in *Watson*.

> Following *Hangey*, the Superior Court in *Watson* likewise did not base its decision that Philadelphia County was an improper venue for the case on the fact the defendant sold and had products shipped to big-box retailers' distribution centers located outside of Philadelphia County, the big-box retailers shipped the defendant's product to its Philadelphia County retail stores, and those Philadelphia County retail stores decided to shelve the defendant's product on its shelves.
>
> The Pennsylvania Superior Court determined Philadelphia County to be an improper venue for the case because, in relevant part, (1) the defendant had no authorized dealer in Philadelphia County; (2) the defendant had no physical presence in Philadelphia County; and, as mentioned before, (3) the big-box retailers' business activities in Philadelphia County were not imputed onto the defendant and were irrelevant to determining

- 12 -

the defendant's business activities in Philadelphia County. Additionally, the evidence demonstrated that the big-box retailers, not the defendant, decided and controlled which specific retail store's shelves the defendant's products would appear. Lastly, as a wholesaler, the defendant sold products exclusively to big-box retailers, not directly to any specific retail store or individual consumer in Philadelphia County.

Trial Court Opinion, 10/22/24, at 7-8 (citing **Watson**, 308 A.3d at 868).

Ojo claims that **Watson** is distinguishable because there was no evidence in **Watson** that established that sales of the defendant's product in Philadelphia County provided a financial benefit to the defendant; however, here, there is evidence, in the form of deposition testimony, that big box retailer sale of Hanover Foods' products to consumers in Philadelphia County provided a direct financial benefit to Hanover Foods. **See** Appellant's Brief, at 39-40. It is self-evident that product sales, whether direct to consumers or via a third-party retailer, provide a financial benefit to a business. Thus, **Watson** cannot be distinguished on these grounds.

Further, as **Hangey** and **Watson** recognize, the retail sales of a company's products do not necessarily further, or are essential to, a corporate objective. **See Watson**, 308 A.3d at 868. Here, Hanover Foods sells its products to big box retailers outside of Philadelphia County, not consumers or retailers in Philadelphia County; Hanover Foods makes its profit from the sales to the big box retailers, not the subsequent retail sales of the products to consumers. In other words, Hanover Foods does not receive financial benefits from the sales activity conducted by retailers in Philadelphia County. The big box retailers' placement of Hanover Foods products in their Philadelphia

County stores, in addition to their stores in other counties, satisfies the profit margin of the retailers, not Hanover Foods. Therefore, **Hangey** and **Watson** are controlling in that Hanover Foods sales to big box retailers, whose distribution centers are outside Philadelphia County, does not establish quality contacts with Philadelphia County. Nor does the additional fact of the later retail sales of the products by big box retailers in Philadelphia County.

Accordingly, the trial court did not abuse its discretion in finding that Ojo failed to establish that Hanover Foods regularly conducts business in Philadelphia County and properly transferred venue to York County. Thus, we affirm.[7]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/25/2025

---

[7] Because we find that the trial court did not abuse its discretion in finding that Ojo failed to satisfy the quality prong, it follows that Ojo also failed to satisfy the quantity prong. **See Hangey**, 304 A.3d at 1143-44.